**UNITED STATES of America, Appellee,**

v.

**Ralph RHODES and Sherman Rhodes, Defendants, Appellants.**

**No. 76–1466.**

United States Court of Appeals,
First Circuit.

Argued March 4, 1977.

Decided June 8, 1977.

Nancy Gertner, Boston, Mass., with whom Harvey A. Silverglate and Silverglate, Shapiro & Gertner, Boston, Mass., were on brief, for defendants, appellants.

Kenneth P. Nasif, Asst. U. S. Atty., Boston, Mass., with whom James N. Gabriel, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

ALDRICH, Senior Circuit Judge.

Defendants Rhodes, father and son, own and once operated a large produce farm in western Massachusetts. Because of illness of the father they discontinued this operation, but on October 15, 1975, entry having been obtained by a state warrant, they were discovered to have raised, instead eight tons of marihuana. A state prosecution was instituted, but was shortly dismissed when the warrant proved faulty.

A few days earlier, namely, on October 10, two others, Giacobozzi and Devlin, made the mistake of selling 300 pounds of marihuana to an undercover government agent in Boston. On apprehension, Devlin implicated defendants as their source. Defendants were indicted in the federal court, and tried to a jury in Springfield. Giacobozzi and Devlin were the principal witnesses against them. Following conviction, they appeal. The only issues of any consequence related to the alleged contamination of the jury by the knowledge of the state arrest and seizure, which had received widespread publicity at the time of the capture.

The government was careful to avoid any reference to this large scale activity, but defendants, not unnaturally, were apprehensive that the jurors might learn, or have learned, of it, extraneously. At the voir dire the court asked the jurors a number of questions—though less than defendants requested—the only one presently pertinent being, after telling the jurors briefly of the nature of the case and the government's contention,

"Have any of you ever heard of this case?"

There was no response. Defendants did not object to the limited form of the question; indeed, the phrase "this case" appeared in two of the questions they had themselves proposed. Instead, in a brief not conspicuous for its attention to detail in this, and a number of other respects, they call the jurors "liars," in the light of an affidavit indicating that some of the jurors had been aware of the aborted state court proceeding.

■ It is regrettable that the court's question was in terms restricted to "this case," rather than extended to defendants

generally, and that no other presently pertinent inquiry was made.[1] "This case," on its face, however, plainly means the present proceeding. We readily hold that jurors, ignorant of voir dire procedure, are to be held to the question asked, and not to some other question that should have been asked. *See DeRosier v. United States*, 8 Cir., 1969, 407 F.2d 959, 963; *Kissell v. Westinghouse Elec. Corp.*, 1 Cir., 1966, 367 F.2d 375. Counsels' uncalled for and intemperate charges are not a substitute.[2]

■ We need not, however, pause on this matter, because later events place defendants on unshakable ground. During the middle of the two day trial, a local newspaper, regrettably, republished the facts about the state officers' seizure of the eight tons of marihuana at defendants' farm. This presented court and counsel with a serious dilemma to avoid a miscarriage of justice.[3] Obviously, the court could not ask the jurors, "Did you read in the paper about defendants having been caught with eight tons of marihauna?" Defendants proposed that they be asked, first, whether they had read anything about the case, and then carry on from there if an affirmative answer was received. The government proposed that they be asked, in one breath, whether they had read anything that might influence their opinion. The court adopted the latter course. After stating that it had heard there had been some recent publicity, and reminding the jury that it had instructed them not to be influenced by publicity, the court asked the jury,

> "I now ask you whether any of you have read or heard of any publicity regarding this case that may have changed your mind as to your freedom of choice in this case. . . . [H]as anything oc-

curred to change your mind from being impartial jurors in this case?"

No response was received.

The assertion in the government's brief that the statement in defendants' brief that the court chose the government's "formulation" "is not true," is quite unjustified. Even more so is the assertion that defendants' ultimate proposal was "very similar to the question proposed by Government counsel [and that] [t]he court then agreed with the recommendation of counsel for defendants." The difference between the two-step questioning that defendants proposed and never departed from, and the single, combined question the court put is substantial, and of great significance. The court's questioning in no way elicited what, if anything, the jurors had learned, but let the jurors decide for themselves the ultimate question whether what they had learned had prejudiced them, without permitting the court to give any further instruction, or pursue further interrogation. We appreciate the dilemma the court was in, but in light of the serious nature of what the jurors might well have learned, this was altogether too telescopic an approach. The seriously prejudicial matter that was in the local paper could not be so easily disposed of. For reasons pointed out recently, since the trial, *United States v. Perrotta*, 1 Cir., 1977, 553 F.2d 247, this was prejudicial error.

■ Unhappily, the matter did not stop even there. After the trial, defendants filed a motion for a new trial, supported by an affidavit of a reporter who had attended the trial, stating that on the day the newspaper account had appeared, he saw one of the jurors carrying "what appeared to me to be a morning newspaper under his

---

1. Defendants had requested a voir dire question as to whether the jurors had ever heard of the defendants.

2. We are no happier with some of the personalities expressed in the government's brief. The possibility of jury taint is a serious matter, and the tenor of the government's brief and argument—that this is but a fabrication of a disgruntled loser—is indeed shocking. This is a

court of law, where we expect decorum, and restriction to the issues, and not a professional hockey match. We do not wish to see a repeat performance, by either side.

3. Over and again courts must wonder whether such publications are made out of ignorance, or indifference to whether a defendant obtains a fair trial.

arm," [4] and that after the trial several of the jurors had told him that the jury was aware of, and had discussed, earlier publicity concerning defendants' state prosecution. The trial court's denial of the motion without conducting any investigation, not even questioning the journalist, let alone the jurors, was an altogether insufficient response to the serious matters raised by the allegations of the affidavit. *United States v. Perrotta*, ante; *United States v. Howard*, 5 Cir., 1975, 506 F.2d 865; *United States v. Thomas*, 7 Cir., 1972, 463 F.2d 1061.

Partly because of the number of possible issues, and partly because so much time has gone by since the discharge of the jury, we feel it would be best for the court to set aside the verdicts and grant defendants a new trial, rather than seeking now to explore the questions of the jurors' exposure to information regarding defendants' additional history. *United States v. Thomas*, ante, 463 F.2d at 1065; *Mares v. United States*, 10 Cir., 1967, 383 F.2d 805, 809.

*Reversed.*

---

4. Defendants' motion for a new trial inaccurately ballooned this into meaning that "several jurors . . . [brought] into the jury room copies of a local newspaper . . . which . . . contained references to the . . . suppressed evidence."