UNITED STATES of America, Appellee,

v.

John CORBIN, Defendant, Appellant.

No. 78–1027.

United States Court of Appeals,
First Circuit.

Argued Dec. 6, 1978.

Decided Jan. 17, 1979.

Julian Soshnick, Boston, Mass., with whom David M. Scoll, Newton, Mass., was on brief, for defendant, appellant.

Charles E. Chase, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

On June 13, 1974, John Corbin disappeared. A Worcester attorney, he had been vacationing on Martha's Vineyard, where his clothes and other personal effects were found on a beach. After an unsuccessful search, he was presumed dead by drowning.

John Corbin left behind his partners in his law practice and title searching company, a wife, three children, and numerous life insurance policies of which his wife and children were, pursuant to various legal agreements, ultimate beneficiaries. All told, $312,000, including $110,000 in accidental death benefits, was paid by seventeen insurance companies after his disappearance.

In 1977, John Corbin, a.k.a. John Richard Wasley, was found living in Nevada.

Corbin subsequently was indicted on fifteen counts of having caused the mails to be used for the purpose of executing a scheme to defraud certain insurance companies 18 U.S.C. § 1341. He was tried before a jury and convicted on nine counts, after charges on six counts were dismissed.[1] On January 6, 1978, he was sentenced to two years confinement, stayed pending appeal.

On the evening of the second day of the trial, counsel for Corbin was told by an attorney uninvolved in the case that a Mrs. Nixon, a challenged juror, had allegedly overheard another juror declare that Corbin was guilty while the jury was being impanelled. The court, with all counsel present, attempted to identify the offending juror by giving Mrs. Nixon an opportunity to view the jurors, by reconstructing the seating arrangement, and by questioning Mrs. Nixon and the four jurors who were most likely the one Mrs. Nixon overheard. All four jurors denied under oath having made or heard anyone make the statement in issue. One of the jurors told the court that the jury had not yet begun to talk or deliberate about the case. Although Mrs. Nixon identified the foreman, Mr. Bauer, as the

---

1. One count was dismissed because no evidence as to the insurance policy named in the indictment was introduced; the others were dismissed because some of the checks settling the policies had been mailed together, allowing the government to charge only one offense.

offender,[2] he vehemently denied having made the statement and the court, after questioning him, was unwilling to find that he had.

At the conclusion of this investigation, Corbin made a motion for mistrial, which the court denied. The court did decide to excuse Bauer, however, feeling that the damage, if any, to the objectivity of the jury would be cured thereby. Corbin's counsel did not request any further measures.

On appeal, Corbin argues that the district court erroneously refused to declare a mistrial in response to the problem of the biased juror; that its instructions did not make it sufficiently clear that the jury had to find that he had a specific intent to cause the life insurance proceeds to be paid out; that it erroneously refused to include certain instructions requested by him; and that it erroneously denied a motion for acquittal on certain counts based on the ground that there was insufficient evidence to prove that he had purchased or caused to be purchased the insurance policies named in those counts.

■ When a non-frivolous suggestion is made that a jury may be biased or tainted, the district court must undertake an adequate inquiry into whether the alleged tainting incident occurred and whether it was prejudicial. *See Remmer v. United States,* 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954); *United States v. Rhodes,* 556 F.2d 599 (1st Cir. 1977); *United States v. Perrotta,* 553 F.2d 247, 249–50 (1st Cir. 1977); *United States v. Doe,* 513 F.2d 709, 711–12 (1st Cir. 1975); *United States v. Larkin,* 417 F.2d 617 (1st Cir. 1969), *cert. denied,* 397 U.S. 1027, 90 S.Ct. 1271, 25 L.Ed.2d 536 (1970); *Patriarca v. United States,* 402 F.2d 314, 318 (1st Cir. 1968),

*cert. denied,* 393 U.S. 1022, 89 S.Ct. 633, 21 L.Ed.2d 567 (1969). Corbin argues that the court's investigation and findings here were insufficient. We do not agree.

The district court interrogated the jurors most likely to have heard the prejudicial comment, if it was made. All of these jurors stated, under oath, that they had not heard anyone make such a comment. The court then said that it did not find that Bauer had made the statement, but that it nevertheless would dismiss Bauer from the jury in order to do whatever it could to rid the jury of any possible taint.[3] Although the court did not issue formal findings, it can be inferred from its remarks that it found that (1) the testimony elicited in its inquiry did not support a finding that Bauer had made the statement, (2) the possibility remained that Bauer had made it, (3) that whatever damage, if any, had been done was cured when Bauer was excused.

■ A district court has broad, though not unlimited, discretion to determine the extent and nature of its inquiry into allegations of juror bias. *Doe,* 513 F.2d at 712; *United States v. Hendrix,* 549 F.2d 1225, 1227 (9th Cir.), *cert. denied,* 434 U.S. 818, 98 S.Ct. 58, 54 L.Ed.2d 74 (1977). Given the circumstances, and the information that the court elicited from the jurors, it did not err in its handling of the situation. Its findings are sufficient to permit judicial review and its decision, to continue the trial after dismissing Bauer, was reasonable. We start with the very real possibility that the statement quoted by Mrs. Nixon may not have been made at all. Even if made, moreover, it seems more a piece of eccentricity than a meaningful comment. That it was either not made or went unnoticed is indicated by the fact that the jurors most

---

**2.** Mrs. Nixon testified that the juror "said a couple of times, 'He's guilty. He's guilty.' " She remarked, "he might have been speaking to himself." The comment was in "a moderate voice," and was not part of a conversation. She reiterated, "I think he was just talking out loud to himself."

**3.** The court said,
   ". . . [T]he jurors all stated that they were indifferent, and I put every question I could think of that might elicit indifference. I don't find at this time that Mr. Bauer said these things, but I would take the step of excluding him from the jury in order to do whatever can be done, short of starting in all over again next year, to rid the jury of any possible taint."

likely to have heard it could recall having heard nothing. Finally, removing Bauer before the jury had started its deliberations removed the possibility that the person who was said to have made the statement would be in a position to influence his fellow jurors. *Cf. Doe,* 513 F.2d at 712–13 (only juror who could possibly have been tainted replaced; no prejudice from this or several other incidents); *Larkin,* 417 F.2d at 618 (no prejudice although jury saw defendants in handcuffs); *United States v. Cyphers,* 553 F.2d 1064, 1071 (7th Cir.), *cert. denied,* 434 U.S. 843, 98 S.Ct. 142, 54 L.Ed.2d 107 (1977) (possibility of prejudice after biased juror excused speculative; court under no duty to ask jury sua sponte whether it knew why juror excused); *United States v. Hendrix,* 549 F.2d at 1229–30 (no prejudice where juror's expressed desire "to see that they put some of these people away" probably referred only to those who are absolutely guilty); *United States v. Love,* 535 F.2d 1152, 1157 (9th Cir.), *cert. denied,* 429 U.S. 847, 97 S.Ct. 130, 50 L.Ed.2d 119 (1976) (jurors' awareness of improper but innocent conversation between juror and defendant not prejudicial); *Morgan v. United States,* 399 F.2d 93 (5th Cir. 1968), *cert. denied,* 393 U.S. 1025, 89 S.Ct. 635, 21 L.Ed.2d 568 (1969) (finding of no prejudice after receiving report that juror had prejudged case).

True, the court could have asked all of the jurors, instead of just some, whether they felt that their ability to judge the case impartially had been in any way impaired, during either the impanelling or the trial as a result of the remarks of a fellow juror or of the unexplained investigation culminating in the dismissal of Bauer. *See, e. g., Rhodes,* 556 F.2d at 601; *Perrotta,* 553 F.2d at 250; *Patriarca,* 402 F.2d at 318. Inquiry of all the jurors may well be indicated when prejudicial matter is likely to have reached any one of them. *E. g., Rhodes,* 556 F.2d at 601; *Perrotta,* 553 F.2d at 250; *Patriarca,* 402 F.2d at 318. Here, however, if the jurors sitting near Mrs. Nixon did not hear the alleged remark, it is most improbable that any others did. Moreover, since it was not clear that the statement had been made or heard by anyone, more harm than good

might have resulted from questioning each juror. The court treated the matter with commendable seriousness and diligence, endeavoring at some length, without success, to determine what, if anything, happened, and finally dismissing Mr. Bauer over the latter's strenuous protestations of non-culpability. We have no occasion to upset its on-the-spot judgment which, if not reflecting the only way the matter could have been handled, reflected a rational and fair disposition.

The issues that Corbin next presents arise from the fact that a necessary part of the government's case was proof of Corbin's specific intent to defraud the insurance companies. In defense, Corbin sought to establish that his intent in disappearing was only to escape from an unsatisfactory marriage and a high-pressure job; that he had made adequate provisions for his wife independent of his insurance policies; that his applications for insurance were made at the urging of, and for the benefit of, third parties, especially his partner; and that, because he had allegedly given his partner clues that he was not dead, he could not have expected that insurance claims would be filed after his disappearance.

Corbin contends that his theory of defense was not fairly presented to the jury in that the court failed to comment upon evidence favorable to Corbin and denied his request for certain instructions. Corbin concedes that he objected neither to the court's failure to comment on the evidence bearing on intent nor to the charge on intent that the court did give. He contends, however, that plain error occurred. We disagree.

■ The court's purported failure to comment on the evidence most favorable to the defense was not plain error. The parties were told before closing argument that the court would not make arguments for them in its instructions, but that they were free to argue their respective theories to the jury. Defense counsel had ample opportunity to comment on the evidence in his closing argument, which he did. The court

for the most part did not address the evidence in its charge, and did not give undue emphasis to the evidence favoring the government. Its reference to the fact that the defendant left his belongings on the beach could not have been prejudicial, much less plain error, when that information was an essential part of the story and was something the jury could hardly have forgotten.

■ Corbin also asserts that the court erred in refusing to give seven instructions relating to the burden of proof and the issue of intent. Although he objected to the court's failure to give these instructions at the close of its charge to the jury, he did so only by a blanket enumeration and without explanation, *see* Fed.R.Crim.P. 30; *United States v. Lachmann,* 469 F.2d 1043, 1044–45 (1st Cir. 1972), *cert. denied,* 411 U.S. 931, 93 S.Ct. 1897, 36 L.Ed.2d 390 (1973), and he did not object again after the court issued a supplemental instruction in response to his objections. He argues, however, that the court understood the nature of his objection and that its failure to give the requested instructions was, in any event, plain error, since it meant that the defendant's theory of the case was not presented to the jury. We do not agree.

■ The court's charge stated the burden of proof and the issue of intent correctly. Indeed, we cannot understand how Corbin can argue that the court did not give his two almost identical instructions stating, in essence, that the government had to prove Corbin's guilt beyond a reasonable doubt. This principle was clearly stated several times, albeit not in the exact language Corbin proposed. As for the remaining five instructions, dealing with the issue of intent, the court told counsel before closing argument that it would not adopt them because they either were repetitious, inaccurate, or stated the issues in the negative and were "more confusing and immaterial than helpful." This exercise of discretion was not improper. The court was not required to adopt the language of the defendant. *See United States v. Wright,* 542 F.2d 975, 988 (7th Cir. 1976), *cert. denied,* 429 U.S. 1073, 97 S.Ct. 810, 50 L.Ed.2d 790 (1977); *United States v. Newson,* 531 F.2d 979, 983 (10th Cir. 1976); *United States v. Garner,* 529 F.2d 962, 970 (6th Cir.), *cert. denied,* 426 U.S. 922, 96 S.Ct. 2630, 49 L.Ed.2d 376, 429 U.S. 850, 97 S.Ct. 138, 50 L.Ed.2d 124 (1976); *United States v. Scheper,* 520 F.2d 1355, 1357–58 (4th Cir. 1975). Three of the proposed instructions were, moreover, overly restrictive, in that they suggested that Corbin could have had only one intent. Two others would have told the jury to acquit if it found that someone other than Corbin intended to defraud the insurance companies. The issue, as the court correctly stated it, was whether Corbin had intended to defraud the companies, regardless of whether third persons shared his intent or whether he had other motivations as well. The court's supplemental instruction properly stated that Corbin could not be convicted if his intent "did not include" defrauding the insurance companies.

■ Corbin's final argument is that, while he admitted having purchased or caused to be purchased policies from five of the companies listed in the indictment, he made no such admission as to the others. He argues that the evidence did not link him adequately with the latter; that there was no direct evidence on this point beyond the similarity of the name of the insured; and that the circumstantial evidence was insufficient to connect him with the policies he did not admit buying.

Viewing the record as a whole, we find that the evidence linking Corbin with the policies in question was sufficient to allow them to be admitted as evidence and to allow the jury to conclude that he had purchased them or caused them to be purchased. Claims on all of the companies named in the indictment were filed by a Robert Price, an attorney employed by Corbin's law firm who had known Corbin for about twenty-four years. He admitted filing the claims and identified Corbin's estate, Corbin's wife, and a trust established by Corbin as the beneficiaries. Corbin's partner, Sarapas, testified that he and Corbin had funded their practice and buy-sell agreements with life insurance policies with

one of the companies named in a count Corbin unsuccessfully sought acquittal on. Finally, the insurance company records, including applications and designations of beneficiaries, pointed to Corbin as the one who purchased or caused to be purchased the policies in question.

*Affirmed.*