Frank L. HOOK, Petitioner,

v.

Harry J. BERKEMER, Sheriff, Respondent.

No. C-2-83-2269.

United States District Court, S.D. Ohio, E.D.

Nov. 6, 1984.

---

Paul D. Cassidy, R. William Meeks, Columbus, Ohio, for petitioner.

Karen Martin, Asst. Pros. Atty., Columbus, Ohio, for respondent.

## OPINION AND ORDER

DUNCAN, District Judge.

Petitioner Frank L. Hook brings this action for a writ of habeas corpus pursuant to the provisions of 28 U.S.C. § 2254. This matter is before the Court on the petition, return of writ and supplement thereto, the petitioner's traverse and the supplement thereto, and the exhibits of the parties, including the transcript of proceedings in *State v. Hook, et al.,* No. 82–CR–05–1645A (Ohio C.P. Franklin Co. 1982).

Petitioner was indicted by the Franklin County, Ohio Grand Jury on May 12, 1982.[1] The indictment charged petitioner with one count of operating a gambling house in violation of R.C. 2915.03 and two counts of gambling in violation of R.C. 2915.02. Petitioner entered pleas of not guilty to the charges. The case was tried to a jury, which found him guilty of operating a gambling house in violation of R.C. 2915.03 and guilty of gambling in violation of R.C. 2915.02. A not guilty verdict was rendered on the remaining gambling charge. Petitioner was sentenced to a term of imprisonment of two to five years and a fine of $5,000.[2] The sentence was suspended upon the condition that petitioner serve a 90-day term in the Franklin County Corrections Center and be placed on probation for a period of five years. Petitioner's sentence was stayed pending appeals, and as of this date he has not yet served the sentence imposed.

Petitioner's conviction was affirmed on appeal to the Ohio Court of Appeals, Tenth Appellate District. *State v. Hook,* No. 83–AP–71 (App.Ct. Franklin Co., Sept. 15, 1983). The Supreme Court of Ohio denied a motion for leave to appeal.

The habeas petition alleges that petitioner's conviction was obtained in violation of the United States Constitution on the following grounds:

1.  Where a sworn trial juror, in the presence of the rest of the jury, states that Petitioner looks like a criminal and questions why the criminals are permitted to enter through the front door of the courtroom, the trial court should, upon proper motion, conduct inquiry of trial jurors to determine what effect, if any, such prejudicial comments had on their ability to remain fair and impartial toward Petitioner; and where the trial court refuses to conduct such inquiry, Petitioner's right to a fair trial and due process of law as guaranteed by the federal and state constitutions is violated.

2.  Where during trial defense counsel discovers that the prosecution intentionally failed to disclose critical impeachment evidence concerning a key prosecution witness, despite timely and specific motions for discovery, pursuant to Rule 16 and *Brady v. Maryland,* the trial court should, upon proper motion, provide for an appropriate sanction or, alternatively, permit a short continuance; and where the trial court rejects such motion, Petitioner's right to a fair trial and due process of law as guaranteed by the federal and state constitutions is violated.

Petitioner has fully exhausted his habeas claims as required by 28 U.S.C. § 2254(b), (c).

## I

Briefly summarized, the testimony presented at trial shows that, in August of

---

1.  The nine-count indictment charged petitioner and co-defendants Robert Carter, David Cassan, Tonia Colley, and Samuel Minico with offenses including gambling, operating a gambling house, and possession of drugs. Petitioner was charged only in the first three counts of the indictment.

2.  Violations of §§ 2915.02 and .03 are generally misdemeanors in the first degree; however, petitioner's previous gambling conviction in 1981 raised the violations to felonies of the fourth degree. *See,* R.C. 2915.02(D) and 2915.03(B).

1981, the Columbus Police Department began an investigation into the possible gambling activities of defendants. Residences at 6547 Sawmill Road and 240 Odessa, in Dublin, Ohio, were placed under surveillance. A survey of the trash retrieved revealed sports schedules, mailing labels, envelopes, and bills addressed to petitioner Hook. On January 10, 1982, both premises were searched pursuant to warrants.

In executing the warrant for 6547 Sawmill Road, the officers were required to forcibly enter the premises. They also encountered two locked metal doors, one leading to the basement, the other in the basement leading to the room the officers intended to search. Three of the defendants, not including petitioner, were found in the locked basement room. Six telephones in the room had been destroyed by an axe. Sports schedules, water soluble paper, a telephone credit card bearing the name of Francis Tanner, and an Ohio Bell envelope sent to Francis Tanner at that address were found. The room was smoke-filled, and there were charred papers inside a sump pump. Partially dissolved paper was retrieved from a large aquarium in the room.

The Sawmill Road premises were served by five telephone lines, four of which bore consecutive numbers. This equipment was registered in the name of Francis Tanner, who was subsequently identified as petitioner Frank Hook. At trial, a number of witnesses testified to placing sports bets by calling 889–2900, one of the numbers in operation at the Sawmill Road residence. Furthermore, although petitioner had moved out of the Sawmill Road residence in 1978, he continued to pay rent for the premises.

At the 240 Odessa address, police confronted petitioner Hook handing money and a check to one of his daughters. The check was made out to cash for $4,416 and was signed by Lew Shore. Lew Shore testified that the check recovered at the Odessa address had been meant to cover his gambling debts with defendant Hook.

## II

Because the Court reaches different conclusions as to the merits of petitioner's claims, the Court will discuss those claims in reverse order.

In his second claim, petitioner contends that he was denied due process of law by the prosecutor's failure to disclose allegedly vital impeachment evidence concerning an important government witness and by the trial court's failure to grant a mistrial or a continuance, or to impose sanctions for the prosecutor's alleged misconduct.

In *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1960) the Supreme Court stated that

the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution.

*Id.* at 87, 83 S.Ct. at 1196. Evidence favorable to an accused includes material which might be used to impeach a government witness. *Giles v. Maryland,* 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967); *United States v. Sweeney,* 688 F.2d 1131 (7th Cir. 1982). In order to establish a breach of the *Brady* doctrine, petitioner must establish: (1) that the prosecution in fact suppressed the evidence; (2) that the evidence bears favorably on the defense at trial; and (3) that the evidence was material to the question of guilt or innocence. *Moore v. Illinois,* 408 U.S. 786, 794–95, 92 S.Ct. 2562, 2567–68, 33 L.Ed.2d 706 (1972). When a specific request for the evidence has been made, as in this case, the standard of materiality of whether the evidence, if disclosed, "might have affected the outcome of the trial." *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

Petitioner's claim revolves around the testimony of Joyce Carey, a government witness, who was a paid police informant during the pre-arrest investigation of petitioner's alleged gambling operation. At trial, Ms. Carey testified that she had placed sports wagers by telephone during

the 1981 football season by calling the phone number with the last four digits 2-9-0-0. She testified initially that she could recall neither the full telephone number nor another number later given to her by petitioner's co-defendant Sam Minico.

Ms. Carey did not originally testify as to her relationship with the police. The day after her initial testimony, Ms. Carey was recalled to the witness stand. She testified that she now recalled the telephone numbers she had used to place bets, and that her initial reluctance to testify stemmed from her fear of defendant Minico.

Following Ms. Carey's second appearance in court, defense counsel discovered through a private investigator that Ms. Carey was a police informant, and that she had been paid for her participation in the gambling investigation. When confronted in court with this information, the prosecutor admitted the truth of the statements. Ms. Carey was recalled yet again to the stand, and defense counsel questioned her out of the presence of the jury. She acknowledged her relationship with the Columbus Police Department, and stated that she was paid in cash for her participation. After overruling defense counsel's motions for a mistrial, a continuance, exclusion of the testimony, and sanctions, the court permitted defense counsel to cross-examine Ms. Carey in the jury's presence. She testified to her activities and the cash payments, and admitted that she had lied when testifying previously.

■ *Brady* claims involve "the discovery, *after trial*, of information which had been known to the prosecutor but unknown to the defense." *United States v. Agurs*, 427 U.S. at 103, 96 S.Ct. at 2397 (emphasis added). Thus, even though the evidence might be material or might create a reasonable doubt as to guilt, due process, while requiring eventual disclosure, does not always require that the disclosure occur *before* trial. When evidence becomes known during trial, as it was in this case, the issue becomes "whether the disclosure came so late as to prevent the defendant from receiving a fair trial." *United States*

*v. Sweeney*, 688 F.2d 1131, 1141 (7th Cir. 1982), *quoting, United States v. McPartlin*, 595 F.2d 1321, 1346 (7th Cir.), *cert. denied*, 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979).

■ A review of the transcript indicates that, after Joyce Carey's status as a police informant became known, defense counsel was given the opportunity to cross-examine her, both outside the presence of the jury and with the jury present. The defense did, in fact, extensively cross-examine Ms. Carey, attacking her credibility not only by reference to her status as a paid informant, but also by reference to the inconsistencies in her testimony during the several occasions she was asked to take the stand. Though defense counsel's trial tactics may have been affected by the late discovery, he was nevertheless able to introduce and utilize the evidence. Coming as it did after Ms. Carey had already changed her story once, the information made her even less credible as a witness than she would otherwise have appeared. This Court is unable to conclude that petitioner was prejudiced by the late discovery. While the conduct of the prosecutor is not to be condoned, the failure to produce this evidence did not, under the circumstances, violate due process. *See, United States v. Samuelson*, 697 F.2d 255, 260 (8th Cir.1983); *United States v. Xheda*, 704 F.2d 974, 983 (7th Cir.1983); *United States v. Kopituk*, 690 F.2d 1289, 1339 (11th Cir.1982); *United States v. Wooten*, 688 F.2d 941, 949 (4th Cir.1982).

■ Furthermore, even if the trial court erred in its handling of the discovery problem, no constitutional violation occurred. Where no specific guarantee of the United States Constitution has been violated, state trial errors are not cognizable in federal habeas corpus unless the trial court ruling renders the trial fundamentally unfair. *Engle v. Isaac*, 456 U.S. 107, 119, 102 S.Ct. 1558, 1567, 71 L.Ed.2d 783 *reh. denied*, 456 U.S. 1001, 102 S.Ct. 2286, 73 L.Ed.2d 1296 (1982); *Moore v. Illinois*, 408 U.S. 786, 799-800, 92 S.Ct. 2562, 2570, 33 L.Ed.2d 706 (1972); *Logan v. Marshall*, 680 F.2d

1121 (6th Cir.1982); *Bell v. Arn*, 536 F.2d 123, 125 (6th Cir.1976); *Reese v. Cardwell*, 410 F.2d 1125 (6th Cir.1969); *Kinser v. Cooper*, 413 F.2d 730 (6th Cir.1969); *Gemmel v. Buchkoe*, 358 F.2d 338 (6th Cir. 1966). A fair reading of the record indicates no fundamental unfairness as a result of the trial court's actions regarding the discovery violation. Defense counsel was permitted to recall the witness and to extensively cross-examine her. The jury was made aware of both her role as a paid informant and her untruthfulness earlier in the trial. There is no indication that the discovery violation significantly impaired the effectiveness of counsel or the fairness of the trial process in any way. This Court finds petitioner's second claim to be without merit.

### III

Petitioner's first claim asserts that his rights to a fair trial and due process were violated by the trial court's failure to either disqualify the jury or *voir dire* individual jurors following certain remarks by one juror concerning the appearance and conduct of petitioner.

Jury selection in petitioner's case took place over the course of nine days, beginning November 9, 1982 and ending November 18, 1982. Counsel were permitted to inquire of members of the venire individually and apart from the remainder of the panel. After the jury had been impaneled, but before the taking of evidence, the following proceedings took place on the record:

THE COURT: Mrs. Yingling, you know, I don't know how to go about this. It has come to the Court's attention that you made a statement back there in the jury room, that on the surface, at least, it would appear that you might be prejudiced against the defendants.

The statement was that Frank Hook looks like a criminal.

MRS. YINGLING: I didn't say that.

THE COURT: I don't know. Of course, that is what has been told to the Court. Another statement you made was some comment about the criminals are allowed to come in the front door, but the jurors have to come through the back door. That doesn't bother me as much as the statement that Frank Hook looks like a criminal.

MRS. YINGLING: I don't think I said it like that.

THE COURT: Could you tell us what it was?

MRS. YINGLING: I don't remember what I said. I don't know what to say. I didn't know that, at the time, that the people, you know—I didn't know that they weren't locked up or anything. I don't know what the situation is I don't know if they hold these people assumed guilty until proven innocent or whatever. I had seen one of them go out the same door. I didn't mean it as a prejudiced statement. I meant they were going out and coming in, the same way we were. We had been talking about stairs, that it looked like they brought prisoners in and out. I am sorry.

THE COURT: Okay. What I am going to do, just so there is no possibility that, you know, in the event there is a conviction, that the defendants may be able to assert this as a possible grounds for appeal, I am going to have to excuse you. Okay?

Thank you very much.

MRS. YINGLING: I am sorry. I didn't mean to.

THE COURT: Don't apologize. I understand how people say things.

MRS. YINGLING: We talked about different things.

THE COURT: We have to be absolutely sure this case is done right.

MR. CASSIDY [attorney for Sam Minico]: Could I suggest, perhaps, Mrs. Yingling be requested not to discuss this with the other jurors.

MR. RIEBEL [attorney for Frank Hook]: Or other people, period.

THE COURT: Are you a second-week juror?

MRS. YINGLING: Yes.

THE COURT: She will be going home anyhow.

.    .    .    .    .

MR. MEEKS [attorney for Sam Minico]: I want to comment on Tom Warfel's comment. He is the gentleman that came in here yesterday. The Court advised us yesterday, and we would certainly follow that Court's ruling, you are not going to permit us to inquire of those seated jurors who have now been sworn who may have overheard Mrs. Yingling's comments that Mr. Warfel related in here yesterday.

Based on the Court's ruling, I want to make a complete record in case there was a conviction in this case.

By way of factual statement, I want to get [the prosecutor] Dave Johnson's input so the Court of Appeals can have our stipulated factual statement of what Warfel stated yesterday, since he is not in here right now. I will state it.

Yesterday, November 17, 1982, Tom Warfel, a seated juror, who has now been sworn as a regular juror in this case, contacted Bill Sheehan, the bailiff for Judge Reda, and advised him of an apparent impropriety that occurred in the hearing of the jurors already seated in this case.

Mr. Warfel related to Mr. Sheehan, and in chambers in the presence of Judge Reda, the prosecution, Dave Riebel, Paul Cassidy and myself, and Mr. Sherman, that basically the following comments were overheard by him and the other jurors who are now regular jurors in this case.

The comments came from Betty Yingling. She stated words to the effect that Frank Hook looks like a criminal. And in addition to that, she made the comment that she did not understand why she, as a juror, had to come in and out of the back door when criminals can come in and out of the front door.

Is that basically a correct statement of facts?

MR. JOHNSON: Yes.

THE COURT: I think that is a correct statement of what he reported to us. He also said that some of the jurors got on this gal, but not all of them. He said the great majority were very upset with what she said.

MR. MEEKS: That is correct.

MR. JOHNSON: I think the comments were the other ten.

MR. MEEKS. It is clear that the seated jurors in this case have heard what I would characterize as prejudicial statements. The concern I have is, if those prejudicial comments have affected seated jurors in this case, we ought to find out about it now so we don't have any more Betty Yinglings on this jury. The Court's ruling yesterday, as I understand it, at this time we are not going to probe into this area of seated jurors, as to the effects of these statements.

I want to note an objection on behalf of Sam Minico, which may be joined in by Frank Hook and others at a later time. Also, in addition to that objection, I am going to move to strike the entire panel. I am going to do that to make the record complete. Otherwise, I would waive it. I want that motion and objection clear on the record for the Court of Appeals.

THE COURT: The motion and objection is overruled.

MR. RIEBEL: Originally I made this motion to the Court. I joined Sam Minico and his lawyers on the motion. I just want to join in this same thing on behalf of all my clients.

THE COURT: Overruled.

Transcript of Trial Proceedings, pp. 20–25.

The state appellate court made the following findings with respect to petitioner's claim:

> The statements made by Yingling constituted an expression of personal opinion reflective of her possible prejudice against the defendant arguably necessitating her dismissal from the jury. The comments, even if made, did not contain any factual information relating to defendant's innocence or guilt. In fact, the stipulation shows that many, if not all, of

the other jurors were upset by the remarks. Therefore, the trial court's action in correcting any possible prejudice by removing the offending juror was appropriate. The trial court did not abuse its discretion in refusing to allow a further *voir dire* of the other jurors. Had Yingling made a statement (for example) that she knew someone who had gambled with the defendant, then further questioning to determine any prejudicial effect would have been mandated. However, where a juror's comment at its worst can only be interpreted, as it was by the jurors who complained, as an expression of personal prejudice relating to the defendant's appearance and path of travel in and out of the courtroom, the trial court was not obligated to extend the trial further by allowing additional *voir dire*. A very lengthy *voir dire* had previously been allowed.

The right to trial by an impartial jury, as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution, assures "to the criminally accused a fair trial by a panel of impartial, 'indifferent' jurors." *Groppi v. Wisconsin*, 400 U.S. 505, 509, 91 S.Ct. 490, 492, 27 L.Ed.2d 571 (1971); *Irvin v. Dowd*, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). In this regard the United States Supreme Court has defined the constitutional standard which all criminal trials must meet:

> Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen.

*Smith v. Phillips*, 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982).

When a non-frivolous suggestion is made that a jury may be biased or tainted, the court must undertake an adequate inquiry into whether the alleged tainting incident occurred and whether it was prejudicial. *United States v. Corbin*, 590 F.2d 398 (1st Cir.1979). In *Remmer v. United States*, 347 U.S. 227, 229, 74 S.Ct. 450, 451,

98 L.Ed. 654 (1954), the United States Supreme Court stated that in order to protect the integrity of jury proceedings, the trial court should not decide and take final action *ex parte* on allegations of jury prejudice, "but should determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." *Id.* at 230, 74 S.Ct. at 451. See *Smith v. Phillips, supra*, 455 U.S. at 215, 102 S.Ct. at 944 ("This Court has long held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias."), and *United States v. Pennell*, 737 F.2d 521 (6th Cir.1984) (*Remmer* controls the question of how the court "should proceed where such allegations are made, *i.e.*, a hearing must be held during which the defendant is entitled to be heard.") Within that framework, a court has broad, though not unlimited, discretion to determine the extent and nature of its inquiry into allegations of juror bias. *United States v. Corbin, supra*, 590 F.2d at 400.

In a federal habeas action such as the one at bar, the Supreme Court has held that a trial judge's findings with regard to juror prejudice are presumptively correct under 28 U.S.C. § 2254(d). *Smith v. Phillips, supra*, 455 U.S. at 209, 102 S.Ct. at 940. The Court added "that federal courts in such proceedings must not disturb the findings of state courts unless the federal habeas court articulates some basis for disarming such findings of the statutory presumption that they are correct and may be overcome only by convincing evidence." *Id.* at 218, 102 S.Ct. at 946.

Petitioner claims that his rights to a fair trial and due process were violated by the trial court's refusal to conduct further *voir dire* proceedings of the seated jury after their exposure to prejudicial comments by another juror, or in the alternative, to disqualify the jury entirely. The trial court overruled these motions without elaboration or comment.

■ One of the difficulties encountered in the resolution of the case at bar is the absence of any specific findings made by the trial court. This Court is highly sensitive to its obligation to defer to such fact findings if they are discernible. It is, however, reasonable to infer that after a hearing the trial court found (1) that the juror made the statements complained of in the presence of one or more of the other impanelled jurors and (2) that defense counsel's suggestion that the statements may have biased or tainted the other jurors was frivolous, or that the damage, if any, that had been done was cured when the juror was excused.

■ As stated above, unless a suggestion that a jury may be biased or tainted is found to be frivolous, the court must undertake an adequate inquiry into whether the alleged tainting incident occurred and whether it was prejudicial. In my view, a suggestion of bias requiring an adequate inquiry need satisfy a rather low threshold of significance.

For example, in *United States v. Corbin, supra,* on the evening of the second day of trial, the court was told that a juror was alleged to have been overheard to say, while the jury was being impanelled, that Corbin (the defendant) was guilty. Such a statement made before any evidence was heard at trial is somewhat similar to the remark allegedly made by the offending juror in the case at bar to the effect that defendant Hook looked like a criminal.

The United States Court of Appeals for the First Circuit disagreed with Corbin's contention that, in denying his motion for mistrial due to jury bias, the trial court's investigation and findings thereon were insufficient. The First Circuit noted that the trial court had interrogated the jurors most likely to have heard the alleged prejudicial comment. The Court of Appeals also inferred from its remarks that, pursuant to the investigtion the trial court found that (1) the jurors' testimony did not support a finding that the prejudicial statement had been made, (2) the possibility remained that the comment may have been made, and (3)

whatever damage, if any, that had been done was cured when the offending juror was excused. Noting that the juror's alleged statement seemed "more a piece of eccentricity than a meaningful comment," the First Circuit concluded that the trial court did not err in its handling of the situation "[g]iven the circumstances, and the information that the court elicited from the jurors ..." *Id.* at 400. In sum, while discounting the importance of the offending juror's alleged comment, the First Circuit rested its holding on the adequacy of the trial court's investigation and findings.

■ As mentioned above, the trial court's findings, even those established solely by inference, are to be accorded deference by this Court and treated as presumptively correct.

■ Nevertheless, despite the most generous benefit of such inference drawing, any finding by the trial court in this case that the juror's statements were frivolous must be found unreasonable by this Court in light of the generally prejudicial nature of the statements made and the total absence of facts of record supporting the trial court's conclusion to the contrary. The Court does not hold that, as a matter of law, a trial court may never reasonably find statements such as those allegedly made in this case or in *Corbin* to be frivolous, but that, standing totally by themselves on the record, there is no reasonable basis for this Court to agree that such statements are on their face so frivolous or nonprejudicial as to obviate the trial court's duty to conduct an adequate investigation into whether such statements were made and their actual prejudicial effect on the jury.

■ The Court of Appeals for Franklin County, Ohio, found and concluded that the alleged statements could not have prejudiced the other jurors because they constituted an expression of personal opinion on matters not at issue at trial. While in a habeas corpus proceeding this Court is obligated to also extend presumptive deference to findings or explanation made by a state appellate court, this Court must re-

ject the general proposition that when a juror makes any allegedly offensive remark about a defendant to the other jurors which is a personal opinion and does not directly refer to an issue of trial, defense counsel should be denied any opportunity for a *Remmer*-type hearing. Depending on the totality of the circumstances, a general statement may well be just as potentially harmful as a statement of fact or opinion going to the merits of an issue at trial. In the instant case, and in light of the nature of the statements allegedly made herein, in this Court's view the trial court's duty to conduct a hearing concerning any potential effect on the other jurors cannot be avoided by, in effect, concluding without explanation that there is no reasonable doubt that such statements could not have caused any juror to be biased.

The record indicates that a hearing was held at which the trial court and both parties agreed that the allegedly prejudicial statements had indeed been made and had been heard by other members of the jury. It does not appear, however, that the court undertook any sort of inquiry into whether the statements actually resulted in jury prejudice or conducted a hearing at which defendant was given the opportunity to demonstrate actual jury bias. As the court stated in *Remmer v. United States, supra,* 347 U.S. at p. 229, 74 S.Ct. at p. 451, "We do not know from this record, nor does the petitioner know, what actually transpired, or whether the incidents that may have occurred were harmful or harmless." It is just such uncertainty that gives rise to a constitutional necessity that defendant be given an opportunity to persuade the Court that there was bias.

Because of the Court's inability to find, on the record before it, that the statements made were frivolous, or were subjected to an inquiry as to their actual prejudicial effect on the jury, the Court is unable to conclude that petitioner was accorded a fair trial.

This Court expresses no opinion on the issue of the most appropriate means now available to the State of Ohio by which the constitutional error in this case may be remedied. It is for the courts of this State to determine at this point whether or not petitioner's constitutional right to an impartial jury may yet be assured by an evidentiary hearing into the issue of actual juror bias, without necessarily ordering a retrial of petitioner.[3]

In accordance with the foregoing, it is hereby ORDERED that a writ of habeas corpus discharging petitioner shall issue sixty (60) days from the date of this order unless the State of Ohio releases petitioner, or provides petitioner an adequate opportunity to prove actual juror bias, or commences retrial within that period. If respondent files a timely notice of appeal, however, this Order shall be stayed until sixty (60) days following the docketing in this Court of the mandate from the United States Court of Appeals for the Sixth Circuit.

It is so ORDERED.

---

**3.** The Court notes that in *United States v. Thomas,* 463 F.2d 1061 (7th Cir.1972), after holding that the district court had insufficiently investigated allegations that the jury had read and discussed a prejudicial news article, the Court of Appeals stated, "we find that this failure necessitates a new trial. Remand for the purposes of investigating the jury would be fruitless at this point, over two years after the close of the original proceeding." *Id.* at 1065.