OPINION
Appellant, William Sweitzer, appeals his conviction in the Trumbull County Court of Common Pleas on four counts of rape involving four separate incidents during 1997 with his then fifteen-year-old daughter, who we will refer to as "Mary." Following his conviction, appellant filed a motion for mistrial and a motion for judgment notwithstanding the verdict. Both motions were overruled by the trial court. The following facts are relevant to a determination of this appeal.
According to Mary, appellant began molesting her when she was approximately six years old. The molestation occurred when the victim's mother was not home and the victim's brothers were either away or outside the family trailer in North Bloomfield, Ohio. Mary testified that appellant exposed her to Hustler and Playboy magazines as well as pornographic videos so that she could see "how it's supposed to be done." Appellant was not indicted on any of the foregoing acts.
According to Mary, however, in April 1997, appellant engaged in sexual intercourse with her against her will. She testified that she cried during the incident. Then, in July 1997, a second incident of sexual intercourse occurred according to Mary. Once again, she stated that she did not want to have intercourse with appellant, that she cried during the incident, that she asked him to stop and told him that it hurt.
The third court of rape involved another incident that occurred in the summer of 1997. Mary testified that on that occasion, appellant forced her to perform fellatio on him while he played a pornographic tape in the VCR. This incident was confirmed by Mary's brother, who testified that he accidentally walked into the living room of the trailer that night and saw his sister performing oral sex on his father. The brother confronted appellant who denied any wrongdoing but who, according to the brother, stated that if he ever said anything to anybody about it, appellant would kill himself. This was a threat that Mary heard from appellant every time an incident occurred.
The fourth count of rape involved an incident that Mary claimed occurred in November 1997, when she was home from school due to an illness. She testified that appellant crawled into bed with her and fondled her breasts, inserted his fingers inside her vagina, and touched her clitoris. She stated that she told him to stop and to go away, and that she tried pushing his hands away but he was being persistent and would not stop.
Eventually, on December 23, 1997, after Mary's mother decided to leave appellant and end their marriage, Mary told her mother about everything that had happened to her. An investigation ensued by the Trumbull County Children Services agency. On January 23, 1998, appellant was indicted on four counts of rape in violation of R.C. 2907.02(A)(2), felonies of the first degree. Appellant was initially represented by an attorney from the Ohio Public Defender's Office, but private counsel was later hired to represent him at trial. The matter proceeded to a jury trial on November 23, 1998, and appellant was convicted on all four counts. Appellant was sentenced to serve ten years on each count with three of the counts to run concurrently, and a fourth count to run consecutively. Appellant filed a motion for mistrial based upon juror misconduct, bias and prejudice, and a motion for judgment notwithstanding the verdict. Both motions were overruled by the trial court.
Appellant timely filed a notice of appeal and has now set forth the following assignments of error:
 "1. The trial court erred in allowing the state to introduce testimony of alleged prior acts of the defendant.
 "2. The trial court erred in overruling the defendant's motion for mistrial.
 "3. The trial court erred in over-ruling defendant's motion for acquittal at the close of the state's case.
 "4. The trial court erred in over-ruling defendant's motion to determine indigency status, motion for appointment of a medical expert and motion for appointment of an investigator."
In the first assignment of error, appellant contends that the trial court erred in allowing the state to introduce testimony of alleged prior acts into evidence. Specifically, appellant argues that it was improper for the trial court to allow Mary to testify that she had been molested by her father since she was six years old, when all of the charges against him resulted from alleged acts that occurred when she was fifteen. Hence, he asserts that the admission of this testimony regarding uncharged acts was highly prejudicial and should have been excluded.
Both the Ohio Rules of Evidence and the Ohio Revised Code permit a trial court to admit evidence of prior acts under certain circumstances. Evid.R. 404(B) provides:
 "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
Similarly, R.C. 2945.59 states:
 "In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."
The admission or exclusion of evidence rests within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. State v. Sage
(1987), 31 Ohio St.3d 173, paragraph two of the syllabus. In order to establish an abuse of discretion, the trial court's decision must be shown to have been unreasonable, arbitrary, or unconscionable. State v.Adams (1980), 62 Ohio St.2d 151, 157.
This court has previously stated:
 "* * * [E]vidence of other acts cannot be used to show that the person merely acted in conformity with his prior behavior. Instead, the evidence must help to establish one of the matters listed in the rule, which corresponds to those in the statute. In construing the statute, the Supreme Court has held that this type of evidence must not only `tend to show' one of the listed matters, but must also be relevant to proving defendant's guilt.
"* * *
 "* * * The Supreme Court has held that evidence of other acts is admissible under the `scheme, plan, or system' exception in two situations: when the prior acts form part of the background of the crime charged; or when identity of the perpetrator is at issue. * * * As to the former, the prior acts must be `inextricably related' to the crime charged." State v. Kirklin (June 16, 1989), Portage App. No. 1961, unreported, at 4-6. (Citations omitted.)
There is no question regarding the identity of the perpetrator in this case, therefore, the other acts evidence that appellant argues should have been excluded would only be admissible under the "background of the crime" exception. This case is similar to a case previously decided by this court, State v. Gaster (Aug. 17, 1990), Lake App. No. 89-L-14-113, unreported. InGaster, the rape victim was the daughter of the defendant. She was permitted to testify about some earlier uncharged sexual misconduct on the part of her father. This court held that testimony regarding the uncharged acts was admissible. We stated:
 "In this cause, the evidence showed appellant's repeated involvement with the victim. Such evidence indicates the prior `acts [which] form part of the background of the crime charged.' Therefore, it was admissible. In our judgment, the background of the prior act should be expanded to include a `scheme or plan.'" Id. at 6.
 Additionally, we pointed out that the trial court judge gave a limiting instruction informing the jury that the acts were not to be considered as any proof that the defendant did any act alleged in the indictment. Thus, we held that the instruction was effective in curing any possible defect.
Similarly, in the case sub judice, the testimony offered by the victim about prior acts was extremely limited. Essentially, she was permitted to acknowledge that sexual abuse had been occurring for a relatively long time, that it always took place in the family trailer, when her mother was not home, and her brothers were not present. None of the details of these prior incidents were disclosed to the jury. This pattern of prior abuse was simply background for the crimes that appellant was charged with in the instant case.
Furthermore, the state was careful to inform the jury during opening arguments that "[t]here may be some testimony come forward here in this courtroom about other activity between the defendant and his daughter. It shows not bad character on his part, but rather that he had a plan, scheme, or opportunity to do these things." Then, just after Mary took the stand to testify, the trial court specifically instructed the jury as follows:
 "Ladies and Gentlemen, there's going to be some testimony conceivably about prior acts that are not specified in these charges here. Any testimony about any prior sexual activity is not to be used to show any bad character on behalf of the defendant or to show he might be guilty of other things. It can only be used to determine things along the line of opportunity, plan, and a few other items like that. So this testimony is being allowed in for certain limited purposes, but not to show a bad person or that he was guilty of these other acts."
Based upon the purpose of introducing the testimony in question — to establish a scheme, plan, or system — and, taking into consideration the limiting instruction given by the trial court, we must conclude that the trial court did not abuse its discretion in admitting this testimony. Hence, appellant's first assignment of error is without merit.
In the second assignment of error, appellant asserts that the trial court erred in overruling his motion for a mistrial. Appellant claims that he was entitled to a mistrial based upon juror misconduct. His motion for mistrial was supported by an affidavit of Rhonda Cadwallader wherein she claimed that during appellant's trial, on Tuesday, November 23, 1998, she overheard a conversation in the Hippodrome Restaurant in Warren, Ohio, that was coming from a group of four jurors having lunch next to her. Cadwallader alleged that Jurors Hetrick, Spirko, Chermansky, and Tvaroch were dining at the table next to her, and that she heard the following:
 "Hetrick: I cannot believe this, what this father did to his daughter, sticking his penis into her mouth.
 "Spirko: I don't believe he did it. The girl changed her story too many times.
 "Chermansky: The man looks guilty, he has to be guilty.
 "Hetrick: Well, [Mary's brother] is credible. We believe him. He is the witness that we needed."
In response to appellant's motion for mistrial, the trial court asked for, and received, memoranda from both parties. The court also received an affidavit from Juror Tvaroch, one of the jurors who was supposedly dining at the Hippodrome on November 23, 1998. However, it is unclear how the trial court came into possession of this affidavit as it was never filed with the clerk's office.
An analysis of a juror misconduct case requires a two-tier inquiry. State v. Taylor (1991), 73 Ohio App.3d 827,833. First, the court must determine whether there was juror misconduct. Then, if juror misconduct is found, the court must determine whether the misconduct materially affected the defendant's substantial rights. Id.
In State v. Rudge (1993), 89 Ohio App.3d 429, this court addressed the issue of juror misconduct, stating:
 "The trial judge, being confronted with a nonfrivolous suggestion of jury impartiality, was obligated to inquire into the possibility that fundamental notions of fairness had been infringed during appellant's trial, which resulted in the guilty verdict, and that a biased attitude within the jury might prevent a just determination of the penalty phase. The trial judge could best evaluate the deliberating and nondeliberating jurors' testimony, and possessed very broad discretion in conducting the inquiry and in making his determination. Nebraska Press Assn. v. Stuart
(1976), 427 U.S. 539, 547-550, 96 S.Ct. 2791, 2797-2798, 49 L.Ed.2d 683, 690-692. The United States Sixth District Court of Appeals has stated:
 "`The sixth amendment right to trial by jury is designed to ensure criminal defendants a fair trial by a "panel of impartial, `indifferent' jurors." Irvin v. Dowd, 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 [755] (1961). When possible juror misconduct is brought to the trial judge's attention he has a duty to investigate and to determine whether there may have been a violation of the sixth amendment. See, e.g., United States v. Griffith, 756 F.2d 1244, 1252
(6th Cir. 1985); United States v. Pennell, 737 F.2d 521, 532-33 (6th Cir. 1984), cert. denied, [469] U.S. [1158], 105 S.Ct. 906, 83 L.Ed.2d 921
(1985); United States v. Corbin, 590 F.2d 398, 400
(1st Cir. 1979). Since the trial judge is in the best position to determine the nature and extent of alleged jury misconduct, his decision on the scope of proceedings necessary to discover misconduct is reviewed only for an abuse of discretion. See e.g., United States v. Soulard, 730 F.2d 1292, 1305 (9th Cir. 1984); United States v. Halbert, 712 F.2d 388, 389 (9th Cir. 1983), cert. denied, 465 U.S. 1005, 104 S.Ct. 997, 79 L.Ed.2d 230 (1984); United States v. Chiantese, 582 F.2d 974, 978-79 (5th Cir. 1978); United States v. Hendrix, 549 F.2d 1225, 1227-29 and n. 2 (9th Cir. 1977).' United States v. Shackleford (C.A.6 1985), 777 F.2d 1141, 1145." Id. at 441-442.
In the present case, the trial court found that there was no juror misconduct without first conducting a hearing or even interviewing Rhonda Cadwallader. Additionally, it is clear that the trial court considered the affidavit of Juror Tvaroch in reaching its decision. This was an affidavit that was never properly filed, nor is there any indication that it was supplied to defense counsel. In short, it should not have been even considered by the trial court.
It is clear that when the trial court was faced with a nonfrivolous suggestion of juror misconduct, it failed to make further inquiry into the allegations as it had a duty to do to ensure that appellant's Sixth Amendment right was not infringed upon. This was error which warrants a reversal of appellant's convictions and a remand for a new trial.
Accordingly, we conclude the trial court erred in overruling appellant's motion for a mistrial in the manner it did. Appellant's second assignment of error is sustained.
In the third assignment of error, appellant maintains that the trial court erred in overruling his motion for acquittal at the close of the state's case. It is appellant's contention that the state failed to introduce sufficient evidence on the element of force necessary to sustain convictions on each of the four rape counts pursuant to R.C. 2907.02(A)(2). Pursuant to that statute, the state must show that the defendant engaged in sexual conduct with another and the defendant purposely compelled the victim to submit by force or threat of force.
"Force" is defined by R.C. 2901.01(A) as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." In State v. Eskridge (1988), 38 Ohio St.3d 56, the Supreme Court of Ohio elaborated upon this definition with respect to children:
 "The force and violence necessary to commit the crime of rape depends upon the age, size and strength of the parties and their relation to each other. With the filial obligation of obedience to a parent, the same degree of force and violence may not be required upon a person of tender years, as would be required were the parties more nearly equal in age, size and strength." Id. at paragraph one of the syllabus.
However, courts have held that the force required to be demonstrated in a rape case need not be overt or physically brutal but, rather can be subtle and psychological. State v. Fowler (1985), 27 Ohio App.3d 149,154; State v. Rutan (Dec. 16, 1997), Franklin App. No. 97APA03-389, unreported, (1997 WL 781902); and Statev. Cobb (Mar. 18, 1993), Cuyahoga App. No. 61676, unreported, (1993 WL 76872).
In the case at bar, Mary was being molested by her own father. There is no evidence that she was physically threatened, but there is ample evidence that appellant psychologically threatened her. He repeatedly threatened suicide which he carefully explained to her would cost her, her mother, and her brothers, family income resulting in the family ending up living on the street. There was also substantial evidence that Mary cried during the sexual encounters and told appellant to stop. She physically removed his hand from her private area only to have him force his hand back and insert his fingers in her vagina. She testified that she was scared and did not know how appellant would react if she had tried to stop him.
While appellant's insistence did not amount to violence, it is clear that sufficient force was demonstrated to sustain the four convictions under R.C. 2907.02(A)(2). Appellant's third assignment of error is without merit.
In the fourth assignment of error, appellant contends that the trial court erred in overruling his motion to determine indigency status, his motion for appointment of a medical expert, and his motion for appointment of an investigator. In essence, cappellant argues that it was error to deny him the use of state-funded experts.
A review of the record reveals that, initially, appellant was represented by an Ohio Public Defender. However, friends of his family hired a private attorney to represent appellant. Then, claiming that he was still indigent, appellant asked the trial court for the appointment of a medical expert and an investigator. The trial court denied his requests based upon appellant's representation by private counsel. The court stated that "hybrid" representation does not exist in Ohio, and that a defendant is either indigent or not indigent. However, the trial court first allowed appellant a brief indigency hearing on the record.
The determination of indigency will not be reversed absent an abuse of discretion. State v. Weaver (1988), 38 Ohio St.3d 160,161. In State v. Tymcio (1975), 42 Ohio St.2d 39, the Supreme Court of Ohio held:
 "A preliminary determination of indigency does not foreclose a redetermination of eligibility for assigned counsel when, at a subsequent stage of a criminal proceeding, new information concerning the ability or inability of the accused to obtain counsel becomes available." Id. at paragraph two of the syllabus.
Thus, it appears that one's status as indigent or non-indigent does not necessarily have to stay the same throughout a criminal proceeding. That status can change over time. Additionally, this court has recently held that the fact that a defendant has private counsel does not preclude him or her from being declared indigent. State v. Pasqualone (Mar. 31, 1999), Ashtabula App. No. 97-A-0034, unreported. InPasqualone, the defendant filed a motion for the appointment of experts at state expense to aid in his defense. The trial court denied his motions solely on the grounds that he had retained private counsel.
On appeal, this court stated that it disagreed with the trial court's reasoning, stating:
 "It is entirely conceivable that a defendant may be indigent for one purpose, but not for another. For example, a defendant's resources may be drained by the expenditure of obtaining private counsel. Thus, while a defendant can afford private counsel, he or she may not be able to afford other costs of the case such as an investigator or expert witnesses." Id. at 9.
However, this court ended up affirming the defendant's conviction due to the defendant's failure to provide the trial court with any evidence to support his claim of indigency. The present case is distinguishable in this regard since appellant was given a hearing on his status of indigency and presented evidence to support his claim. Hence, we must conclude that the trial court erred in denying appellant's motions solely on the basis that he was represented by private counsel. See, also,State v. Caulley (Sept. 9, 1999), Franklin App. No. 98AP-74, unreported, (1999 WL 694955).
The state counters, however, with the argument that even if appellant was indigent, he failed to demonstrate that expert services were reasonably necessary. The Supreme Court of Ohio has held:
 "Due process, as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Section 16, Article I of the Ohio Constitution, requires that an indigent criminal defendant be provided funds to obtain expert assistance at state expense only where the trial court finds, in the exercise of a sound discretion, that the defendant has made a particularized showing (1) of a reasonable probability that the requested expert would aid in his defense, and (2) that denial of the requested expert assistance would result in an unfair trial." State v. Mason (1998), 82 Ohio St.3d 144, syllabus.
The defendant bears the burden of establishing a reasonable necessity for such assistance, and "[u]ndeveloped assertions that the proposed assistance would be useful to the defense are patently inadequate."State v. Scott (1987), 41 Ohio App.3d 313, 315, citingCaldwell v. Mississippi (1985), 472 U.S. 320, 323-324, fn. 1.
We agree with the state's assertion, however, a review of appellant's pertinent motions reveal that while they are quite general, they are specific enough to satisfy the defendant's burden. One, in particular, which attracted our attention is the one asking the trial court to appoint a medical expert to articulate and discuss the sexually transmitted disease, chlamydia. It was appellant's contention that the issue of sexually transmitted diseases may have been important in this rape case. This allegation should have been sufficient to warrant the appointment of a medical expert, provided, of course, that the trial court had concluded that appellant was indigent. The trial court never properly decided that issue, however, due to its insistence that appellant could not have been indigent since he was represented by private counsel.
In conclusion, the basis for the trial court's conclusion was erroneous. Thus, appellant's fourth assignment of error is sustained.
The convictions and sentence of appellant are hereby reversed and the matter remanded for a new trial in accordance with this opinion.
 ________________________________________ JUDGE WILLIAM M. O'NEILL
FORD, P.J., concurs,
CHRISTLEY, J., concurs in judgment only.