David N. TAVARES, Plaintiff, Appellant,

v.

Terry HOLBROOK, Defendant, Appellee.

No. 85–1323.

United States Court of Appeals, First Circuit.

Dec. 11, 1985.

Willie J. Davis, Boston, Mass., for plaintiff, appellant.

Martin E. Levin, Asst. Atty. Gen., with whom Francis X. Bellotti, Atty. Gen., Frederick W. Riley, Asst. Atty. Gen., and Barbara A.H. Smith, Asst. Atty. Gen., Boston, Mass., were on brief, for defendant, appellee.

Before COFFIN and BREYER, Circuit Judges, and HILL,* Senior District Judge.

BREYER, Circuit Judge.

Appellant David Tavares, who is black, asks the federal courts to set aside his first degree murder conviction by a Massachusetts jury. He argues that the jury was impermissibly biased; a bias shown by the fact that one of the jurors was heard to refer to a black defense witness by the stereotypical name, 'Sapphire'. We have reviewed the relevant portions of the state trial record. On the basis of this review, we conclude that Tavares was not deprived of the right to a "fair trial by a panel of impartial ... jurors" guaranteed by the Federal Constitution. *Irvin v. Dowd,* 366 U.S. 717, 722, 81 S.Ct. 1639, 1642, 6 L.Ed.2d 751 (1961). We therefore affirm the federal district court's denial of a writ of habeas corpus.

1. The "Sapphire" remark came to the state trial court's attention after the jury had been sent out to deliberate. An alternate juror, not sent to the deliberation room, told the judge about two remarks he had heard jurors make during the trial prior to closing argument. The alternate juror first referred to a matter not now before us. He said that he had heard a juror say that the reason the defendant had left school was that he had been in trouble and had been arrested—facts which were not mentioned at trial and which therefore suggested some outside source of informa-

* Of the Central District of California, sitting by designation.

tion such as a newspaper. The alternate juror added:

> And in addition to which, ... something I don't think I would have brought up, in discussing the credibility of Roxanne Lawson [a defense witness], one of the jurors made what I considered racially prejudicial remarks by calling her "Sapphire".... This same juror has done what I have encountered among people who I don't consider to be particularly racially prejudiced who come from a non-mixed background or from the south who refer to black people as 'coloreds,' but I didn't think that much of it then. I didn't speak up about this before because I thought there was a good chance I would be in the jury room and that I would have knowledge of what effect or impact or, I don't know what to call it, it would have on the deliberations. And, I'm trying to think what else was said about either one of those things but certainly the first one [the arrest record remark] ... to me is much more significant.

The alternate juror went on to describe the circumstances in which the remark was made. He said that the jurors were joking about what they considered the odd appearance or hair style of the witness.

> Mary said, 'I don't think Roxanne was a good name for her. I didn't think it was really appropriate. The name didn't seem to fit,' I think were her words. And at that point Estelle said either, "Why don't we call her—" I was reading the paper at that point—either, "Why don't we call her 'Sapphire,'" or maybe, " 'Sapphire would be a better name,'" or something like that. But the term 'Sapphire' was used and it was used again today during lunch.

The trial judge then called the jurors back and questioned each of them individually, out of the hearing of the others but in the presence of counsel, who were also free to ask questions. The judge sought to elicit precisely who had said what, who had heard what, whether the remarks reflected prejudice, and whether each juror would remain willing and able to deliberate free from any taint of racial bias.

He found five jurors had heard the Sapphire comment. Each of them emphasized that it was intended as a joke, some stating quite strongly that it was not meant as a racial slur (e.g., "It was merely a joke. Oh, no. No. No slur.") The jurors said the remark would not influence them nor interfere with their deciding the case impartially and solely on the evidence before them, some of them stating this emphatically (e.g., "Q. Is [the jury] ... operating without any outside influences? A. That's an understatement. They sure are.") The juror who made the Sapphire remark characterized it in a slightly more innocent way ("Well, she says, 'I don't picture her as a Roxanne,' ... so I just said, 'What do you picture her as, a Sapphire?'") The juror denied any racial prejudice as she had done strongly at the initial voir dire. She said that she felt the jury was without racial prejudice and that "they're very sincere."

The judge concluded that the Sapphire remark would not significantly interfere with the jury's ability to decide the case impartially, and he denied the defense request for a mistrial. He also found the past arrest record remark—the matter not here in issue—either not to have been made or, if made, to have been heard only by alternate nonparticipating jurors.

2. As noted above, the sole legal issue before us is whether the defendant was deprived of his constitutional right to a fair trial by a panel of impartial jurors. *Irvin v. Dowd, supra*. We shall assume with appellant, for the sake of argument, that the Sapphire remark raised a question about the impartiality of the juror who made it—a question begged by characterizing the remark as a "joke." After all, a racial slur is not automatically rendered harmless simply because it is intended as benign. Its use in certain circumstances could suggest that the jury viewed defendant or his witness through the skewed lens of racial stereotype. And, its use could confirm a black defendant's fear that white persons, evaluating witness testimony, and

judging his actions, are acting with a racial caricature in mind. If such a caricature were to interfere substantially with an objective evaluation of the evidence, it could render the trial unfair.

■ The trial court's response to Tavares' objection, however, was sufficient to remove any such concern. The judge examined the jurors individually and in detail. Counsel were given full opportunity to question the jurors. Our reading of the thirty-five pages of transcript convinces us that the trial court reasonably concluded that the remark was not intended as a deliberate insult, and, in addition, that these jurors would deliberate fairly, impartially, and without bias. Thus, we cannot say that the appellant was deprived of a fair trial.

■ The correctness of this legal conclusion is reinforced by the fact that our power to review a state court's finding of juror impartiality is severely limited. The Supreme Court has recently spoken of the "special deference" that federal habeas courts owe state court findings that jurors are not biased, *Patton v. Yount*, 467 U.S. 1025, 104 S.Ct. 2885, 2892 & n. 12, 81 L.Ed.2d 847 (1984). The Court added that such determinations are protected by the statutory presumption of correctness, 28 U.S.C. § 2254(d), and they can be overturned only on the basis of "convincing evidence to the contrary." *Rushen v. Spain*, 464 U.S. 114, 120, 104 S.Ct. 453, 456, 78 L.Ed.2d 267 (1983) (per curiam); *Sumner v. Mata*, 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). The Court wrote in *Patton*:

There are good reasons to apply the statutory presumption of correctness to the trial court's resolution of these questions. First, the determination has been made only after an often extended *voir dire* proceeding designed specifically to identify biased veniremen ... Second, the determination is essentially one of credibility, and therefore largely one of demeanor. As we have said on numerous occasions, the trial court's resolution of such questions is entitled, even on direct appeal, to "special deference".... The respect paid such findings in a habeas proceeding certainly should be no less...."

104 S.Ct. at 2892. The Supreme Court has expressed similar sentiments in other cases. *E.g., Rushen v. Spain*, 464 U.S. at 120, 104 S.Ct. at 456 ("Here, both the State's trial and appellate courts concluded that the jury deliberations, as a whole, were not biased. This finding of 'fact'—on a question the state courts were in a far better position than the federal courts to answer—deserves a 'high measure of deference' [citing *Sumner v. Mata*, 455 U.S. 591 at 598, 102 S.Ct. 1303 at 1307, 71 L.Ed.2d 480 (1982) ]"); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 851, 74 L.Ed.2d 646 (1983) ("Title 28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court ..."); *Sumner v. Mata, supra; cf. United States v. Anello*, 765 F.2d 253, 259 (1st Cir.1985) (direct review of federal district court investigations subject to trial court's "broad, though not unlimited, discretion to determine the extent and nature of its inquiry into allegations of juror bias"); *United States v. Richman*, 600 F.2d 286 (1st Cir.1979); *United States v. Corbin*, 590 F.2d 398 (1st Cir.1979).

The only two cases that appellant cites wherein failure to remove a biased juror resulted in reversible error, *United States ex rel. Fletcher v. Cavell*, 287 F.2d 792 (3d Cir.1961) and *United States ex rel. DeVita v. McCorkle*, 248 F.2d 1 (3d Cir.1957), are different. *Fletcher* involved a juror whose father-in-law (with whom he had a close relationship) was the county detective responsible for investigating the case and who later testified at trial for the prosecution. In *DeVita*, the juror in an armed robbery-homicide trial had been recently attacked at the same place and under circumstances very similar to the victim in the case. In neither case did the state court make an extensive investigation and then specifically determine, as a matter of fact,

**4**

that there was no bias. *See United States ex rel. DeVita v. McCorkle,* 248 F.2d at 5 ("Notwithstanding the court's above strong intimation of the possibility of establishing prejudice ... no hearing was ordered and no hearing was held."); *United States ex rel. Fletcher v. Cavell,* 287 F.2d at 796 (trial court refused to consider allegation of bias after juror sworn).

In sum, given the thorough investigation of the racial remark by the trial court and its finding of no bias reasonably supported by the sworn statements of jurors revealed in the record, we conclude that Massachusetts did not deprive appellant of his constitutional right to a fair trial before an impartial jury. The district court's decision is therefore

Affirmed.