**Louis NERON, Petitioner,**

v.

**James R. CLEMONS and James E. Tierney, Respondents.**

**Civ. No. 87–0017–P.**

United States District Court, D. Maine.

June 15, 1987.

Joseph H. Field, Mary Lou Ciolfi, Loyd, Bumgardner, Field & Patterson, Brunswick, Me., for petitioner.

Peter J. Brann, Asst. Atty. Gen., Augusta, Me., for respondents.

## MEMORANDUM OF DECISION AND ORDER ON PETITION FOR WRIT OF HABEAS CORPUS

GENE CARTER, District Judge.

This matter is before the Court on the petition of Louis Neron for a writ of *habeas corpus* pursuant to 28 U.S.C. § 2254 (1982). For the reasons set forth below, a conditional writ will issue.

### I. *Factual and Procedural Background*

Petitioner was the defendant in a criminal proceeding before the Superior Court of Sagadahoc County, Maine in 1985. *State v. Neron*, No. CR–85–99. On October 23, 1985 a jury found Neron guilty of two counts of gross sexual misconduct in violation of Me.Rev.Stat.Ann. tit. 17–A, § 253 (Supp.1986), a Class A offense. On October 25, 1985, Petitioner filed a motion for a new trial and a motion for judgment of acquittal, both challenging the impartiality of the jury. Justice William S. Brodrick denied both motions and sentenced Petitioner to serve a five year term of imprisonment in the custody of the Department of Corrections.

Petitioner timely appealed his conviction to the Maine Law Court, raising, *inter alia,* the issue of jury impartiality. On December 30, 1986 the Law Court affirmed the judgment of conviction. *State v. Neron*, 519 A.2d 197 (Me.1986). Petitioner then filed a petition for writ of *habeas corpus* in this Court, alleging that he was being held in custody in violation of his fourteenth amendment right to due process of law in securing an impartial jury and his sixth and fourteenth amendment right to trial by an impartial jury. Respondents concede that Petitioner has exhausted his state remedies as required by 28 U.S.C. § 2254(b), (c).

The facts underlying Petitioner's claim are set forth in detail in the Law Court's decision on Petitioner's appeal, *Neron*, 519 A.2d at 199–200, and thus need not be extensively reviewed here. The following brief summary will suffice. After trial but before sentencing, Petitioner's son, Robert Neron, noticed a list of jurors while at his father's house. Examining the list, he recognized the name of a woman with whom he had shared an intimate relationship beginning in the fall of 1983 and ending in the summer of 1984, slightly more than a year before the trial. At the hearing on Petitioner's post-trial motions, Robert Neron testified that the juror in question had met Lucy Neron (his mother and Petitioner's wife) and his grandmother on one occasion in 1984 and had met his brother, Paul Neron, on another occasion. He was unsure whether the juror had actually met his father, Petitioner.

During jury selection, the court had asked if any venire member knew the Petitioner or any of a number of prospective witnesses. At no time did the juror in question indicate that she knew or recognized Petitioner. Nor did she give any indication that she recognized Petitioner's wife or his son, Paul Neron, both of whom were present in court and introduced to the venire as prospective witnesses. (Robert Neron, with whom the juror had had the relationship, was not present in court at any time during the trial.) Although Petitioner, Lucy Neron, and Paul Neron all testified at trial, the juror never gave the court any indication of any acquaintance or connection with them.

In Petitioner's post-trial motions he asserted that the juror's failure to reveal her acquaintance with members of the Petitioner's family threatened to deprive him of his right to an impartial jury. He acknowledged that during jury selection the juror might not have recognized Petitioner, Lucy Neron, or Paul Neron and that there was no proof that the juror could not have been impartial. He argued that it was nevertheless likely that at some point in the trial the

juror realized her connection to Petitioner and his family; her failure to reveal this connection to the court deprived him of his right to inquire into whether she could serve impartially. Petitioner argued that had this connection been revealed during jury selection, it would have provided a sufficient basis for excusing the juror for cause. He noted that the court had excused for cause one juror who, after being selected but before the trial started, had indicated that he had seen Petitioner at the establishment where both were employed and perhaps had said hello to him. There was a stronger case, he argued, for excusing the juror who had shared an intimate relationship with Petitioner's son.[1] Petitioner requested that, in the event the court denied his motions, the court call in the juror in question to inquire into her possible bias or prejudice.

The court denied the motions for judgment of acquittal and for a new trial and declined to conduct any inquiry into the juror's impartiality. The court stated that:

[t]here should be some evidence before the Court suggesting some kind of bias or prejudice before we start interrogating jurors, which I am reluctant at the present time to do; which the Law Court has said again and again we should be reluctant to do. There has been no evidence of any bias or prejudice or anything else certainly against ... the three members of the Neron family who testified. All the evidence is that there was one casual contact between [the juror] and Mrs. Neron and even more casual contact between [the juror] and Paul Neron where apparently they were at some barbecue. No evidence that they talked or anything like that. No evidence at all that she had met Mr. Neron.... I think we can infer in the fact that she didn't come forward [despite the Court's instruction to venire members to reveal any connection to witnesses, par-

ties, or attorneys] that this extremely considerable [sic] contact that she had with two members of the family who were part of the trial made no impression on her at all. Robert Neron was not only not a witness but wasn't even in court. I am sure if he had been in court that might have triggered her memory but that certainly wouldn't be enough to excuse her for cause I don't think since he played no part in the trial.... I would also point out that on the motion for a new trial it's very important that the evidence justifying a new trial not only be new but be evidence that could not have been found prior to trial. You had the jury list way before trial. Presumably you could have gone over the jury list with your witnesses to see if they knew anybody.... In the first place I don't see any evidence of any kind of conduct that could justify the interrogation of any juror, but beyond that it seems to me the evidence you presented to me was available to you before trial.

Record of Sentencing Proceeding at 12–14.

In affirming the judgment of conviction, the Law Court stated:

On this record, we are unable to say that the court was compelled to conclude that because of her alleged intimate relationship with Robert Neron, who was absent from the courthouse throughout the trial, or because of two brief meetings with the witnesses referred to above, the juror must have recognized any of the individuals involved in the trial of this case. We find it significant that these brief meetings made so faint an impression on the two family-member witnesses that they reciprocally failed to recognize the juror. Thus, since the evidence supported the court's conclusion that the juror's silence had not constituted a false answer, we find no basis for imposing on the trial justice a requirement to conduct

---

1. The court also excused a number of other jurors for cause, based on somewhat attenuated relationships to witnesses, parties, or counsel, without any inquiry into whether that relationship would affect the juror's impartiality. *See* Trial Record at 4 (juror had been represented by another attorney in defense counsel's law firm); *id.* at 4–5 (juror's husband was represented by defense counsel); *id.* at 5 (same); *id.* at 7 (juror worked at same place as Lucy Neron); *id.* at 8 (juror's husband worked with witness); *id.* at 13 (juror's son had been charged with criminal offense by Paul Neron, a police officer).

a post-verdict interrogation of the juror. Contrary to the defendant's contention that the court violated his constitutional right to an impartial jury, we conclude that no juror bias was shown here, and by denying the defendant's motion for a new trial and refusing to interrogate the juror, the court acted well within the scope of its discretion.

*Neron,* 519 A.2d at 199–200.

## II. *Legal Issues*

Petitioner is entitled to a writ of *habeas corpus* only if he can establish that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(3); 2254(a). Here, Petitioner claims that the trial court's refusal to conduct a post-verdict interrogation of the juror in question violated both his fourteenth amendment right to due process of law in securing an impartial jury and his sixth and fourteenth amendment right to trial by an impartial jury.

### A. *Waiver*

■ A preliminary issue is whether Petitioner has waived his right to object to the juror in question. The trial court found that the evidence tending to suggest juror partiality was available to Petitioner before trial, in the sense that nothing prevented Petitioner from reviewing the list of potential jurors with his family members before trial. This was one of the two alternate bases on which the trial court denied Petitioner's motion for a new trial.

As the First Circuit has stated,

a defendant's failure to object to a claimed judicial error (even one of constitutional dimensions) at a state trial constitutes an adequate and independent state ground sufficient to uphold a conviction against the claim of "federal error" if at least (1) the state in fact has a "contemporaneous objection" rule; (2) the state enforces and does not waive the rule; and (3) the defendant fails to show both "cause" for and "prejudice" from, not having complied with the rule. Where these conditions are present, federal habeas courts typically will not reach the merits of the federal constitu-

tional claim. *See Wainwright v. Sykes,* 433 U.S. [72,] 87, 97 S.Ct. [2497], at 2506 [, 53 L.Ed.2d 594 (1977)]; *cf. Francis v. Henderson,* 425 U.S. 536, 542, 96 S.Ct. 1708, 1711, 48 L.Ed.2d 149 (1976) (discussing "cause" and "prejudice").

*McCown v. Callahan,* 726 F.2d 1, 3 (1st Cir.). *cert. denied,* 469 U.S. 839, 105 S.Ct. 139, 83 L.Ed.2d 78 (1984). The question is whether the three requirements of *Wainwright* are met.

As for the first requirement, Maine does have what might be termed a "contemporaneous objection" rule applicable to challenges to jurors for cause. Me.Rev.Stat. Ann. tit. 14, § 1303 (1964) declares: "If a party knows any objection to a juror in season to propose it before trial and omits to do so, he shall not afterwards make it, unless by leave of court for special reasons." The Maine Law Court has extended this rule of waiver to cover situations where a party "could with due diligence ascertain facts, bearing on a juror's qualifications to serve on a jury...." *State v. Chattley,* 390 A.2d 472, 477 (Me.1978).

As for the second requirement, it is clear that the state does generally enforce the rule. *See Chattley; State v. Fischer,* 238 A.2d 210, 215–16 (Me.1968); *Bennett v. State,* 161 Me. 489, 214 A.2d 667 (1965). But it also appears that, under the circumstances of this case, the state has waived the rule. Specifically, the Law Court, in considering Petitioner's appeal, addressed the merits of his constitutional claims without any mention of the possibility that he might have waived those claims. *Neron,* 519 A.2d at 199–200. Such consideration constitutes a waiver of the contemporaneous objection rule. *See County Court of Ulster County v. Allen,* 442 U.S. 140, 147–54, 99 S.Ct. 2213, 2219–23, 60 L.Ed.2d 777 (1979); *cf. McCown v. Callahan,* 726 F.2d at 3. Because this Court finds that the state has waived the rule, there is no need to examine the trial court's apparent conclusion that Petitioner violated the rule (*i.e.,* that he failed to exercise due diligence to discover the juror's potential partiality) or to determine whether there was "cause"

for an "prejudice" from such noncompliance.

Moreover, this case may involve more than a simple failure to make a timely for-cause objection to a juror. The juror herself failed to respond when the venire members were asked whether they knew Petitioner or the family-member witnesses. If this failure to respond was deliberate, it could constitute juror misconduct, rendering irrelevant the failure, if any, to comply with the contemporaneous objection rule.

### B. *The Requirements of Due Process*

The Supreme Court has not directly addressed the constitutional standards governing claims of juror misconduct. The Court has, however, considered the related question of the requirements imposed by due process when evidence surfaces after trial concerning events during trial that call into question a juror's impartiality. In *Remmer v. United States*, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 (1954), a juror in a federal criminal trial had been approached by a person offering money in exchange for a favorable verdict. The FBI investigated the incident and reported the result to the prosecutor and the court, but defense counsel did not learn of the incident or investigation until after trial. At that point the defense moved for a new trial, requesting a hearing to determine the circumstances surrounding the incident and its effect on the jury. The district court refused to hold the hearing and denied the motion for a new trial; the court of appeals affirmed, finding no abuse of discretion.

The Supreme Court reversed. The Court recognized that the attempted bribe was "presumptively prejudicial" and that the investigation might also have jeopardized the integrity of the jury proceedings. The Court held that "the burden rests heavily upon the government to establish, after notice to and hearing of the defendant, that such contact with the juror was harmless to the defendant." *Id.* at 229, 74 S.Ct. at 451. The proper course, the Court concluded, was for the trial court to "determine the circumstances, the impact thereof upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate." *Id.* at 230, 74 S.Ct. at 451. On remand, the trial court held a hearing and found that the defendant had not been prejudiced; the Supreme Court granted *certiorari* again and held that the scope of the trial court's hearing had been too narrow, emphasizing that in such situations "the entire picture should be explored." *Remmer v. United States*, 350 U.S. 377, 379, 76 S.Ct. 425, 426, 100 L.Ed. 435 (1956). Although not decided on constitutional grounds, *Remmer* thus indicates the fundamental importance of a full inquiry into substantial post-trial allegations that a juror may not have been impartial.

More recently, in *Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982), the Court revisited in a *habeas corpus* context the proper response to evidence surfacing after trial of possible juror bias. In *Smith,* during the state court trial a juror submitted an application for employment as a major felony investigator in the district attorney's office; this fact was made known during trial to the actual prosecuting attorneys. After the jury returned a guilty verdict, defense counsel learned of the application and moved to set aside the verdict. The trial court held a hearing, questioned the juror, found as fact that the juror had not been biased or prejudiced, and denied the motion. *Id.* at 211–14, 102 S.Ct. at 943–44. On *habeas,* the district court, while finding insufficient evidence to demonstrate that the juror was actually biased, concluded that it could impute bias to the juror sufficient to warrant a new trial; the court of appeals affirmed.

The Supreme Court reversed, in large part rejecting the "imputed bias" theory.[2] The Court based its holding on its longstanding rule that *"the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity*

---

2. Justice O'Connor concurred, but wrote separately to express her view that the opinion did not foreclose a finding of imputed bias in all circumstances. *Smith v. Phillips,* 455 U.S. at 221–24, 102 S.Ct. at 948–50 (O'Connor, J., concurring).

*to prove actual bias." Id.* at 215, 102 S.Ct. at 945 (emphasis added). The Court stated

[d]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as *voir dire* and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. Such determinations may properly be made at a hearing like that ordered in *Remmer* and held in this case.

*Id.* at 217, 102 S.Ct. at 946 (footnote omitted). In a footnote to this passage, the Court noted that "determinations made in *Remmer*-type hearings will frequently turn upon testimony of the juror in question" and rejected the contention "that such evidence is inherently suspect." *Id.* at 217 n. 7, 102 S.Ct. at 946 n. 7 (citing cases). In conclusion, the Court stated that "if in the federal system a post-trial hearing such as that conducted here is sufficient to decide allegations of juror partiality, the Due Process Clause of the Fourteenth Amendment cannot possibly require more of a state system." *Id.* at 218, 102 S.Ct. at 946.

*Smith v. Phillips* thus suggests that under some circumstances due process requires a post-trial hearing on allegations of juror partiality or misconduct. The case is also noteworthy because it acknowledges that the results of such hearings will frequently turn upon the testimony of the juror in question. It follows that under some circumstances due process requires that when such a hearing is held, the affected juror must be individually questioned. *See also Rushen v. Spain,* 464 U.S. 114, 119–20, 104 S.Ct. 453, 456–57, 78 L.Ed.2d 267 (1983) (*per curiam*) (emphasizing, in *habeas* case, importance of post-trial hearing and questioning of juror re-

garding effect of juror's *ex parte* communications with trial judge).

The recent First Circuit case of *Tavares v. Holbrook,* 779 F.2d 1 (1st Cir.1985), also decided in the *habeas* context, supports this proposition. In *Tavares,* during petitioner's state criminal trial a juror was heard to refer to a defense witness in terms that could have been interpreted as racist. The remark was brought to the court's attention during deliberations, whereupon the court called in and questioned each of the jurors individually, in the presence of counsel who were also free to ask questions, about the effect, if any, of the remark. The court concluded that the remark would not significantly interfere with the jury's ability to decide the case impartially and therefore denied the defense motion for a mistrial; the jury returned a verdict of guilty. In affirming the district court's dismissal of a subsequent *habeas corpus* petition, the First Circuit emphasized that the trial court's individual and detailed questioning of the jurors, with an opportunity for counsel to participate, was sufficient to remove any doubts as to whether petitioner had been deprived of his constitutional right to a fair trial before an impartial jury. *Id.* at 3–4. In this Court's view, if individual questioning is *sufficient* to remove doubts about juror bias or misconduct, then surely in cases of substantial doubt such questioning is *required* to remove the doubt.

A brief survey of some First Circuit cases decided in the direct appellate rather than *habeas* context also indicates that individualized inquiry is crucial when a court learns of substantial allegations of juror partiality or misconduct. Although the cases discussed below are not explicitly grounded upon constitutional standards, they are surely relevant in determining the requirements of fundamental fairness.

In the First Circuit, when a trial court learns of allegations of juror misconduct in a federal criminal trial, the court should: ascertain whether the misconduct actually occurred; if it did, determine whether it was prejudicial; if not clearly unprejudicial, grant a new trial; specify reasons

if the court determines either that the misconduct did not take place or was not clearly prejudicial.... It is left to the discretion of the trial court to choose the extent and type of investigation required to resolve the question. Here, the [trial] court, when apprised of potential juror misconduct, called the errant juror into chambers for questioning on the record. He then held another hearing on the record with all counsel present.

*United States v. Richman,* 600 F.2d 286, 295 (1st Cir.1979) (citing *United States v. Doe,* 513 F.2d 709, 711–12 (1st Cir.1975)). After emphasizing the care with which the trial court had questioned the affected juror, the First Circuit in *Richman* held that the trial court had acted within its discretion. *Id.* at 295–96.

In *United States v. Doe,* 513 F.2d 709, 711–12 (1st Cir.1975), the First Circuit, in upholding the denial of a mistrial motion alleging juror misconduct, was careful to note that the trial court actually interrogated the juror in question. In *United States v. Almonte,* 594 F.2d 261, 266 (1st Cir. 1979), the First Circuit emphasized that a trial court has considerable discretion in investigating allegations of impermissible juror contact but must develop a record that affords an adequate basis for review; it was therefore proper for the trial court, after interviewing the affected jurors, to dismiss only those jurors directly affected by the impermissible contact. In *United States v. Corbin,* 590 F.2d 398, 400–01 (1st Cir.1979), the trial court actually interrogated the affected jurors and on that basis denied a defense motion for a mistrial. The First Circuit affirmed, emphasizing that given the information the trial court had elicited from the jurors, its findings were sufficient to permit judicial review. The First Circuit held that the district court's discretion in such situations, although broad, is "not unlimited." *Id.* at 400. "When a non-frivolous suggestion is made that a jury may be biased or tainted, the district court must undertake an adequate inquiry into whether the alleged tainting incident occurred and whether it was prejudicial." *Id.* at 400 (citing cases). *See United States v. Anello,* 765 F.2d 253,

258–59 (1st Cir.) (holding that district court's discretion in such situations is not unlimited; finding no constitutional violation where court had individually questioned affected jurors to ascertain their impartiality), *cert. denied,* —— U.S. ——, 106 S.Ct. 411, 88 L.Ed.2d 361 (1985).

In *United States v. Rhodes,* 556 F.2d 599 (1st Cir.1977), during the trial some highly prejudicial publicity appeared in local newspapers. The trial court immediately asked the jury as a whole if they had seen any publicity that might affect their impartiality; the court received no response. After the jury returned a verdict of guilty, the defense moved for a mistrial and submitted an affidavit strongly suggesting that one or more jurors had seen and discussed the publicity. The trial court denied the motion without conducting any investigation. On appeal the First Circuit ordered a new trial, holding that the failure to question the affiant, "let alone the jurors, was an altogether insufficient response to the serious matters raised by the allegations of the affidavit." *Id.* at 602. Implicit in this holding is that circumstances may make it unreasonable to rely on a juror's silence in response to questioning of the whole jury about possible bias or prejudice; where evidence suggests that an individual juror may be biased or prejudiced, the court should make further inquiry *of that juror. See United States v. Perrotta,* 553 F.2d 247, 249–50 (1st Cir.1977) (collecting cases).

The foregoing First Circuit cases, although decided in the context of appeals from federal criminal trials rather than in *habeas* proceedings, are sufficient to demonstrate the importance of individualized inquiry into substantial allegations of juror partiality or misconduct. First Circuit cases dealing with different sorts of allegations of juror partiality are to the same effect.

*Habeas* cases from other circuits similarly stress the importance of conducting an individualized inquiry when there is substantial reason to do so. In *Irons v. Lockhart,* 741 F.2d 207 (8th Cir.1984), *cert. denied,* 469 U.S. 1220, 105 S.Ct. 1205, 84 L.Ed.2d 348 (1985), the Eighth Circuit inter-

preted *Smith v. Phillips* as holding that "a petitioner who seeks habeas corpus relief based on an allegation of juror bias must prove actual bias, either in a state court or federal court hearing...." *Irons,* 741 F.2d at 208. In *Irons,* the district court on *habeas* held an evidentiary hearing to permit the petitioner to establish that two jurors, who knew members of the petitioner's family, were actually biased. Because the petitioner did not call either juror as a witness, the district court found no evidence that petitioner had been prejudiced by the seating of the jurors; the Eighth Circuit affirmed. *Id.*

In *Dickerson v. Alabama,* 667 F.2d 1364 (11th Cir.), *cert. denied,* 459 U.S. 878, 103 S.Ct. 173, 74 L.Ed.2d 142 (1982), a *habeas* petitioner raised a substantial claim that a juror had possessed extrinsic knowledge of the case. The Eleventh Circuit held that the district court had erred in failing to hold an evidentiary hearing on this issue.

In *Taylor v. Mabry,* 593 F.2d 318 (8th Cir.1979), the petitioner alleged that at his state court trial a juror, who knew members of the petitioner's family and knew about the petitioner's prior convictions, had told the other jurors about the convictions. The petitioner, apparently satisfied that the juror had intended to help him, sought *habeas* relief on the ground that the other jurors had convicted him based on the extraneous evidence of his other convictions. *Id.* at 319–20. The district court on *habeas* held an evidentiary hearing at which the juror testified that he had not mentioned the prior convictions to the other jurors; the petitioner asked the district court to call in the other jurors to determine if they had been told of the convictions, but the court found no evidentiary basis for doing so and dismissed the petition. The Eighth Circuit affirmed, finding that in the absence of any reasonable cause to believe that any jurors would testify as the petitioner speculated they might, there was no need to question those jurors. *Id.* at 320.

In *Bulger v. McClay,* 575 F.2d 407 (2d Cir.), *cert. denied,* 439 U.S. 915, 99 S.Ct. 290, 58 L.Ed.2d 263 (1978), after petitioner's state court trial a juror told defense counsel that during deliberations the jury had discussed extraneous information gleaned from a newspaper article with the result that the juror had changed his vote. Defense counsel moved for a new trial; in response, the trial court questioned the juror, who denied that the extraneous information had been discussed. Without permitting cross-examination, the trial court denied the new trial motion. On *habeas,* the district court held an evidentiary hearing at which another juror testified that the extraneous information had been heatedly discussed during deliberations; the first juror, although subpoenaed, failed to appear at this hearing. The district court found that the state trial court had failed to give the petitioner an adequate hearing. Rather than deciding the merits of the constitutional issue of jury prejudice, however, the district court directed a writ to issue unless within sixty days the state court granted a new trial. *Id.* at 409–10. The Second Circuit affirmed, agreeing that the state court hearing had been neither full nor fair and approving the district court's having afforded the state court an opportunity to correct its mistake by holding an adequate hearing. *Id.* at 411.

In *United States ex rel. Owen v. McMann,* 435 F.2d 813 (2d Cir.1970), *cert. denied,* 402 U.S. 906, 91 S.Ct. 1373, 28 L.Ed.2d 646 (1971), after petitioner's state court trial several jurors signed affidavits indicating that extraneous information had tainted the jury's deliberations. A defense motion for a new trial on this ground was denied. On *habeas,* the district court held an evidentiary hearing at which the jurors confirmed that the jury had indeed considered extraneous information. The district court directed a writ to issue unless within sixty days the state court granted a new trial. *Id.* at 815–16. The Second Circuit, in affirming, held that the state evidentiary rule limiting jurors' testimony about their deliberations would have to give way where juror testimony was "the only method of proving that the defendant had been denied due process...." *Id.* at 820.

*Irons, Taylor, Bulger,* and *Owen* all involved district courts, in the course of *ha-*

*beas* proceedings, holding evidentiary hearings and questioning individual jurors on questions implicating the petitioners' sixth amendment rights. It does not necessarily follow that in every case where a federal *habeas* court is required to conduct an evidentiary hearing, the underlying state court proceedings were constitutionally defective because of the omission of a similar hearing. *Townsend v. Sain*, 372 U.S. 293, 313 n. 9, 83 S.Ct. 745, 757 n. 9, 9 L.Ed.2d 770 (1963). But state trial courts are obligated to protect defendants' federal constitutional rights; as the Court recognized in *Townsend*, "[i]t is the typical, not the rare, case in which constitutional claims turn upon the resolution of contested factual issues," *id.* at 312, 83 S.Ct. at 756, and defective state factual determinations cannot be conclusive of those federal constitutional rights. *Id.* at 316, 83 S.Ct. at 758–59. If full factual development is required for the vindication of constitutional rights in federal *habeas* courts, surely in some circumstances a similar degree of factual development is necessary to vindicate those same rights in state trial courts.

■■■ This Court gleans from the cases discussed above the following rule. When allegations of juror partiality or misconduct are supported by particularized and nonfrivolous evidence, due process requires the trial court to question the juror on the record about the juror's partiality or misconduct in light of the evidence, unless other evidence clearly establishes that no such questioning is required to guarantee the impartiality or proper conduct of the juror. Such a rule protects the rights of the accused while preserving the large measure of discretion enjoyed by trial judges in investigating and ruling on questions of juror partiality and misconduct. Due process does not require the court to permit counsel to examine or cross-examine the juror (although the court may so permit), nor should the questioning be so extensive or intrusive as to intimidate the juror or otherwise compound the threat to an impartial jury. If the evidence of partiality or misconduct is too general or frivolous, either viewed by itself or in light of

other evidence, no questioning is required. *Cf. Taylor v. Mabry*, 593 F.2d at 320.

The Court notes that another district court, in ruling on a *habeas* petition, has reached a similar result. In *Hook v. Berkemer*, 606 F.Supp. 73 (S.D.Ohio 1984), *vacated and remanded*, 772 F.2d 907 (6th Cir.1985) (unpublished opinion), a juror at the petitioner's state court trial was heard by other jurors to make remarks indicating her bias against petitioner. The court dismissed the juror but denied a defense request to conduct further *voir dire* to determine the effect of the remark on the other jurors. On *habeas* the district court, relying on *Remmer, Smith v. Phillips*, and *Corbin*, held that:

> unless a suggestion that a jury may be biased or tainted is found to be frivolous, the court must undertake an adequate inquiry into whether the alleged tainting incident occurred and whether it was prejudicial. In my view, a suggestion of bias requiring an adequate inquiry need satisfy a rather low threshold of significance.

*Hook v. Berkemer*, 606 F.Supp. at 81. The district court ordered a writ to issue unless within sixty days the state either released the petitioner, afforded him an opportunity to prove actual juror bias, or commenced retrial. While the district court's order was on appeal to the Sixth Circuit, the petitioner was retried and convicted; the Sixth Circuit thus vacated the order as moot. *Hook v. Berkemer*, No. 84–3979, slip op. at 1 (6th Cir. Aug. 2, 1985) (unpublished opinion; disposition reported at 772 F.2d 907). The vacation of the order for mootness in no way called into question the district court's reasoning, which is in harmony with the result this Court reaches in the instant case.

In conclusion, as the Supreme Court emphasized in *Smith v. Phillips*, 455 U.S. at 217, 102 S.Ct. at 946, the sound discretion of the trial court is the first line of defense against juror partiality and misconduct. But that discretion must be exercised within the confines of due process, and in circumstances such as these, the general commands of due process acquire meaning only

through translation into particular procedures for the protection of the accused.

### C. *The Circumstances of This Case*

In this case the trial court found that there was "no evidence of any bias or prejudice or anything else certainly against ... the three members of the Neron family who testified," including Petitioner; there was no "evidence of any kind of conduct that could justify the interrogation of any juror...." Record of Sentencing Proceeding at 12–14. The Law Court, in affirming, interpreted the trial court's remarks as a "conclusion that the juror's silence [on *voir dire*] did not constitute a false answer." *Neron*, 519 A.2d at 199. To the extent that these constituted findings of fact, they are entitled to a presumption of correctness in a *habeas corpus* proceeding. 28 U.S.C. § 2254(d); *Smith v. Phillips*, 455 U.S. at 218, 102 S.Ct. at 946–47. *See Sumner v. Mata*, 449 U.S. 539, 545–47, 101 S.Ct. 764, 768–69, 66 L.Ed.2d 722 (1983) (holding that section 2254(d) presumption of correctness also applies to state appellate court findings of fact). Indeed, the Supreme Court has stated that federal *habeas* courts owe a "special deference" to state court findings that jurors are not biased. *Rushen*, 464 U.S. at 120, 104 S.Ct. at 456–57; *see Patton v. Yount*, 467 U.S. 1025, 1036–40, 104 S.Ct. 2885, 2891–93, 81 L.Ed.2d 847 (1984); *Tavares*, 779 F.2d at 3.

But the presumption of correctness may be overcome by a showing that the factfinding procedure employed by the state court was not adequate to afford a full and fair hearing, 28 U.S.C. § 2254(d)(2), or that the material facts were not adequately developed at the state court hearing, *id.* § 2254(d)(3). To the extent that the state courts in this case found as fact that the juror was not biased and/or that her silence on *voir dire* did not constitute a false answer, this Court views the presumption of correctness attaching to such findings as having been overcome on both of the grounds just mentioned. The factfinding procedure was inadequate because Petitioner was denied the opportunity to have the trial court consider evidence from the juror herself [3]—evidence which the Supreme Court has stated will frequently be dispositive. *Smith v. Phillips*, 455 U.S. at 217 n. 7, 102 S.Ct. at 946 n. 7. *Cf. Tavares*, 779 F.2d at 3 (holding, in case where trial court had conducted individualized inquiry into allegations of jury partiality, that court's finding that jury was impartial was entitled to section 2254(d) presumption of correctness). From this it follows that the material facts were not adequately developed in the trial court. The Law Court's findings of fact, if such they were, were based solely on the same inadequate procedure and record as the trial court's findings; the presumption of correctness attaching to the Law Court's findings has thus been overcome.

It appears to this Court, however, that, so far as Petitioner's challenge to the trial court's procedure is concerned, the trial court's key determination was not a finding of fact.[4] Instead, the court, in ruling on

---

3. Respondents argue that Petitioner was not denied the opportunity to present adequate evidence, because Petitioner could have but did not subpoena the juror to testify at the hearing on the post-trial motions. This argument is meritless. Rather than initiating any direct contact with the juror, defense counsel properly asked the trial court to call in the juror. Upon the court's refusal to do so for reasons unrelated to whether the juror was immediately available and willing to testify, a subpoena would obviously have been futile. And Respondents acknowledge that any other contact with the juror before her discharge from jury service would have been ethically proscribed by Main Bar Rule 3.7(f). *Cf. United States v. Kepreos*, 759 F.2d 961 (1st Cir.1985).

4. As noted *supra*, Petitioner claims violations both of (1) his fourteenth amendment right to due process of law in securing an impartial jury and (2) his sixth and fourteenth amendment right to trial by an impartial jury. His first claim takes issue with the trial court factfinding procedure that denied him access to the juror's testimony; his second claim takes issue with the resulting finding of fact, which is at least implicit in the trial court's statements, that the juror was not biased. If this second claim were Petitioner's only claim, the Court would be forced to conclude that the presumption of correctness attaching to the finding of no bias had been overcome on the grounds identified in section 2254(d)(2), (3). The Court would then be forced to hold an evidentiary hearing on the issue of bias. *Townsend v. Sain*, 372 U.S. at 312–18, 83 S.Ct. at 756–60. But the appropriate relief for

the request to call in the juror for questioning, reached a discretionary or legal conclusion that there was no *evidence* of bias or of the kind of conduct *that could justify post-verdict interrogation of the juror.* Whether a juror is biased or guilty of misconduct is a question of fact; whether further inquiry is warranted into a juror's possible bias or misconduct is not. The conclusion in the instant case that no further inquiry was warranted enjoys no presumption of correctness in this proceeding, and the Court views it as an abuse of discretion or a legal error rising to the level of a constitutional violation.

◼ The question before this Court, then, is whether Petitioner's allegations of juror partiality or misconduct were supported by particularized and nonfrivolous evidence, and, if so, whether other evidence clearly established that no individual questioning of the juror was required. The record reflects that the juror had shared a year-long intimate relationship with Petitioner's son, ending slightly more than a year before trial, during which the juror had met the two family-member witnesses and possibly Petitioner himself. She heard the name "Neron" repeatedly during *voir dire* and most probably during the trial as well. The Court takes judicial notice of the fact that only one "Neron" (Robert Neron, apparently Petitioner's son) is listed in the telephone directories covering the relevant area of Maine and thus that "Neron" is not a common name in that area;[5] Robert Neron also testified to this fact at the hearing on the post-trial motions.[6] Yet the juror failed to come forward during *voir dire* or trial. Regardless of whether any of the Nerons recognized her, it strains credulity to the breaking point to conclude that at no point did she recognize the names, if not the faces, of one or more of the Nerons. It appears highly probable to this Court that she did so;[7] this, together with her silence, certainly constitutes sufficiently particularized and nonfrivolous evidence of juror misconduct so as to trigger the due process requirement that the juror be questioned.[8]

Petitioner's first claim is to give the state trial court an opportunity to hold this very same evidentiary hearing. In the interest of comity, therefore, and because granting relief on Petitioner's first claim preserves Petitioner's right to secure all the relief to which he is entitled, this Court rules only on Petitioner's first claim.

5. *See* Fed.R.Evid. 201(b)(2); *cf. United States v. Ramey,* 559 F.Supp. 60, 64 (E.D.Tenn.1981) (taking judicial notice of telephone directory listing); *Harris v. Beech Aircraft Corp.,* 248 F.Supp. 599, 601 (E.D.Tenn.1965) (same).

6. The Court further notes that counsel and the trial court referred to the juror using the form of address "Mrs." This might be relevant to some degree to the question of why the juror failed to come forward during *voir dire,* in open court in a relatively small community, to reveal her previous relationship with Robert Neron.

7. The trial court's statement that the juror's contact with the family-member witness "made no impression on her at all" arguably constitutes a finding of fact that she did not recognize the Nerons' names or faces. If so, then the presumption of correctness attaching to that finding has clearly been overcome on the grounds identified in section 2254(d)(2), (3). This Court, however, rather than holding a hearing on whether she recognized any of the Nerons, determines that in the interests of comity this issue should be left to the state court. *See supra* n. 4.

8. The Court notes that the trial court specifically found that Petitioner had presented no evidence of any bias or prejudice. The Court emphasizes that, although the actual existence of juror bias was the ultimate issue on which Petitioner's new trial motion rested, it is not the issue before this Court. Rather, this Court is concerned with whether Petitioner was afforded a constitutionally adequate *opportunity to demonstrate* juror bias *or misconduct.* Thus, although the post-trial evidence offered by Petitioner did little to demonstrate juror bias, it certainly raised a substantial question about whether the juror's silence constituted misconduct. In other words, Petitioner presented particularized and nonfrivolous evidence of juror misconduct, although not of juror bias, and was therefore entitled to have the trial court question the juror to determine whether the misconduct occurred and, if so, whether its purpose was to conceal bias.

Given the substantial question as to what motivated the juror's silence, the testimony of the juror herself obviously became crucial so that the court could determine her motivation. Without that testimony, it would be manifestly unfair to require Petitioner to prove, by a preponderance of the evidence or any other standard, that the juror's silence was actually motivated by dishonesty or bias. Indeed, without that testimony, which Petitioner was denied the opportunity to secure, whatever conclusions the state courts may have reached regarding the juror's motivation must be viewed as simply hopeful speculation.

The failure of the Nerons to recognize *her* at trial is hardly conclusive evidence of her attitude toward any or all of *them* and thus does not clearly establish that questioning was unnecessary. Nor is there any suggestion that questioning would have intimidated the juror or otherwise compounded the threat to an impartial jury. The verdict had been recorded and it would have been a simple matter for the trial judge to delay ruling on the post-trial motions and call in the juror for what might well have been a relatively brief period of questioning.

This Court recognizes the delicate balance that must be maintained between state trial courts and federal *habeas* courts, but concludes that, in the circumstances of this case, the trial court's refusal to take this simple step to protect Petitioner's constitutional rights was clearly unjustified and violated Petitioner's fourteenth amendment right to due process of law in securing an impartial jury. It is therefore unnecessary to rule on Petitioner's contention that he was denied his sixth and fourteenth amendment right to be tried by an impartial jury. *See supra* n. 4.

The Court recognizes that over eighteen months have passed since Petitioner's trial and that the memory of the juror in question may have faded since that time. This delay was in no way attributable to Petitioner, however. "It is for the courts of [the] State to determine at this point whether or not petitioner's constitutional right to an impartial jury may yet be assured by an evidentiary hearing into the issue of actual juror [misconduct] without necessarily ordering a retrial of petitioner." *Hook v. Berkemer,* 606 F.Supp. at 82 (footnote omitted).

### III. *Order*

It is therefore *ORDERED* that a writ of *habeas corpus* shall issue sixty (60) days from the date of this Order unless within that period the state trial court either orders a new trial or conducts an inquiry into the juror's alleged misconduct as described above and enters new rulings either granting or denying Petitioner's post-trial motions. If Respondents file a timely notice of appeal, however, this Order shall be stayed until the docketing in this Court of the mandate from the United States Court of Appeals for the First Circuit.